■ MARLENE TAFT, Individually and as Executrix of ROBERT TAFT, Deceased, Respondent, v EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.—Order, Supreme Court, New York County (Shirley Fingerhood, J.), entered on or about October 18, 1990, which denied defendant's motion for summary judgment, unanimously reversed, on the law, without costs, and the defendant's motion for summary judgment dismissing the complaint is granted. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint.

Prior to his death on December 10, 1987, Robert Taft was a partner in the law firm of Certilman, Haft, Lebow, Balin, Buckley and Kremer (the Certilman firm), which had offered to each partner, at the firm's expense, a $100,000 life insurance policy. As set forth in the affidavit of Gary Peckerman, the then administrator of the Certilman firm, Taft filled out an application for insurance in the amount of $100,000, naming the plaintiff as his beneficiary, on a form provided by the

defendant Equitable, which Peckerman mailed to Equitable on October 29, 1987.

On December 10, 1987, at 12:16 A.M., Taft was killed instantly when he was struck by an automobile in Florida. Later that day the Certilman firm received a letter from Equitable's sales representative stating: "Mr. Martin Stein, Mr. Robert Taft and Mr. Stuart Stein's policy *[sic]* are waiting for their first year premium. Would you please send a check payable to Equitable Life for the following amounts: Mr. Martin Stein $208.00; Mr. Robert Taft $472.00; Mr. Stuart Stein $238.00". That same day the Certilman firm mailed to Equitable a check in the amount of $918.00.

When Equitable rejected the plaintiff's insurance claim, plaintiff brought an action to recover $100,000. Equitable raised, among other defenses, the statute of frauds, on the ground that plaintiff was unable to produce a policy or a copy of the application for insurance allegedly filled out by Taft and mailed by Peckerman, and Equitable denied ever having received that application. We need not resolve the statute of frauds issue because even if plaintiff is able to prove the existence of the application and its delivery by parol and circumstantial evidence *(Posner v Rosenbaum,* 240 App Div 543, 546-547; *Matter of Bernard,* 176 Misc 132), Equitable's motion for summary judgment must nevertheless be granted.

The application for insurance regularly used by Equitable includes a Temporary Insurance Agreement which provides, as here pertinent:

"The following conditions must be met before any Temporary Insurance takes effect:

"(1) A completed and properly signed application Part 1 and, if required, Part 2 * * * must be given to us; and

"(2) The first full premium for the policy applied for must be paid * * *

"If a Person Proposed for Insurance dies as a result of accidental bodily injury, directly and independently of all other causes, before a required application Part 2 * * * for that person is completed, then the Temporary Insurance will be in effect unless it terminated earlier."

The record clearly establishes that Taft had died before the premium for the first year was paid, or even mailed. Plaintiff argues that there is at least a factual issue as to whether the last quoted paragraph of the Temporary Insurance Agreement modifies the requirement that the "first full premium for the policy applied for must be paid" in order for the Temporary

Insurance to take effect. We disagree. The Terms of the Temporary Insurance Agreement are unambiguous, and clearly require that the first premium must be paid in order to activate the Temporary Insurance Agreement. The last quoted paragraph of that agreement upon which the plaintiff relies only draws a narrow exception to the first stated condition, so that if the proposed insured dies solely as a result of accidental injury before he is able to complete Part 2 of the application (if required by Equitable), then in that case the Temporary Insurance would still be in effect. In the absence of payment of the premium while Taft was alive, the Temporary Insurance Agreement did not become effective.

We find no merit to plaintiff's argument that because Equitable's sales representative waited five weeks to bill Taft for the first year's premium, Equitable should be estopped from denying coverage. In each of the cases cited by plaintiff in support of this argument, a policy had already been issued, a legal relationship had been established between the insurer and the insured, and the insurer had unjustifiably delayed giving some notice to the insured or otherwise failed in its responsibilities, which operated to the detriment of the insured. *(E.g., Matter of Preston,* 29 NY2d 364; *Dulberg v Equitable Life Assur. Socy.,* 277 NY 17; *Whitehead v New York Life Ins. Co.,* 102 NY 143; *Meyer v Knickerbocker Life Ins. Co.,* 73 NY 516.)* The principle established in those cases is that an insurance company may not depend upon a default to which its own wrongful act or negligence contributed, and but for which a lapse might not have occurred.

Clearly that principle is not applicable to the instant case. Defenses relating to the issue of the coverage and noncoverage are not waivable, and insurance coverage cannot be created by equitable estoppel where no policy of insurance exists *(Van Buren v Employers Ins.,* 98 AD2d 774; *Powers Chemco v Federal Ins. Co.,* 122 AD2d 203). We observe, moreover, that the Certilman firm was aware of the simple procedure whereby the Temporary Insurance Agreement could have become effective, yet it made no inquiries or efforts toward accomplishing that end.

We decline to entertain plaintiff's estoppel argument, based upon the retention by Equitable of the after death payment of the premium for Taft's policy, raised for the first time on the appeal *(Matter of Schwartz v Cuomo,* 111 AD2d 759, *appeal dismissed* 66 NY2d 758). Concur—Sullivan, J. P., Carro, Rosenberger, Kupferman and Rubin, JJ.