■ ANNETTE TRACY, Appellant, v WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, Respondent. [650 NYS2d 907] —Carpinello, J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from an order of the Supreme Court (Rudolph, J.), entered June 19, 1995 in Rockland County, which, *inter alia*, granted defendant's cross motion for summary judgment dismissing the complaint.

On April 30, 1992, plaintiff's husband signed an application for a $100,000 term life insurance policy from defendant. Plaintiff was the designated beneficiary. The application provided that the insurance policy would only take effect after the policy was physically delivered to the insured and the first full premium paid. Also on April 30, 1992, plaintiff and her

husband signed a request for a preauthorized check plan that authorized defendant to draw checks on their joint checking account payable to defendant to cover the premiums that were due and owing under the policy. At the time of the application, plaintiff wrote a check in the amount of $53.13 to cover the first monthly payment and subsequently received the policy in the mail. It is uncontested that neither plaintiff nor her husband ever made any further payments. Plaintiff's husband died on May 9, 1993. When plaintiff sought to collect on the policy, she was advised that it had been canceled for nonpayment of the premium. Plaintiff commenced the instant action and moved for summary judgment on the complaint. Defendant cross-moved for summary judgment. Supreme Court denied plaintiff's motion and granted defendant's cross motion, concluding that the policy never came into effect since no further payments had ever been made. Plaintiff appeals.

Preliminarily, we disagree with Supreme Court's legal conclusion that the policy never came into effect by virtue of nonpayment of premiums. The record indicates that defendant physically sent the policy to plaintiff's husband in early June 1992. Defendant claims that by its own terms the policy would not become effective until the first "full premium" was paid. However, there is no indication in the policy whether this language is meant to refer to a monthly premium, a quarterly premium or a yearly premium. Plaintiff and her husband paid a full monthly premium when they applied for the policy and may reasonably have believed that this payment was sufficient to activate coverage. " 'It is well-settled that if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company' " (*Baker v Nationwide Mut. Ins. Co.*, 158 AD2d 794, 796, quoting *Hartol Prods. Corp. v Prudential Ins. Co.*, 290 NY 44, 49). While it is uncontested that no premium was paid after the first monthly payment, plaintiff contends that by virtue of their application for the preapproved checking plan, she and her husband assumed that defendant was automatically withdrawing payments from their joint account.

In response, defendant argues that it has an internal policy that the preauthorized check plan does not become effective until the insured pays two monthly premiums. It is clear from the record, however, that plaintiff and her husband had no knowledge of this policy since the two-month requirement was not contained on the application form they signed and there is no testimony in the record that the insurance agent told them of this requirement when they signed the application.

Although it certainly would have been preferable for plaintiff or her husband to look at their checking account statements every month to determine whether defendant had presented checks for payment, we cannot, as Supreme Court did, conclude that this lapse bars recovery as a matter of law. Defendant advertised the preauthorized checking plan as a "convenient", "easy", and "automatic" method of paying premiums that would give the insured "peace of mind knowing that [he or she will] never forget to pay a premium on time". However, the effect of Supreme Court's decision is to transform this convenience into a new burden more onerous than that it was designed to replace. In short, under the unique facts present in this case, we find that there is a question of fact regarding whether the policy ever came into effect, thereby precluding an award of summary judgment in defendant's favor (*cf.*, *Taft v Equitable Life Assur. Socy.*, 173 AD2d 267).

Assuming that plaintiff's policy in fact became effective, defendant also notes that on August 8, 1992 it sent notice of cancellation for nonpayment of premiums to plaintiff's husband and that it later returned a check in the amount of $53.13 representing the first month's premium. Plaintiff denies receipt of this correspondence and points to the fact that the check was never cashed as support for this claim. "[F]orfeiture for nonpayment of premiums is not favored in law and will not be enforced, absent a clear intention to claim that right" (*Matter of Preston*, 29 NY2d 364, 368). Insurance Law § 3211 provides that a life insurance policy cannot be terminated for nonpayment of a premium until the insurer has mailed written notice of cancellation, in a form specified by statute, to the insured at his or her last known address.

As the party that seeks to rely upon cancellation of the policy, defendant had the burden of proving as a matter of law that the policy was canceled prior to the date of the death of plaintiff's husband (*see, Abuhamra v New York Mut. Underwriters*, 170 AD2d 1003; *Caprino v Nationwide Mut. Ins. Co.*, 34 AD2d 522). In meeting this burden, an insurance company may create a presumption that the insured received a notice of cancellation by describing the standard operating procedure used by the insurance company to ensure that such notices are properly mailed (*see, Pardo v Central Coop. Ins. Co.*, 223 AD2d 832; *Colon v Nationwide Mut. Fire Ins. Co.*, 211 AD2d 579, 580; *Friedman v Allcity Ins. Co.*, 118 AD2d 517, 518) or the insurance company can provide proof of actual mailing (*see, Hantman v Helsmoortel-Thornton Agency*, 224 AD2d 752, 753, *lv denied* 88 NY2d 804; *Pardo v Central Coop. Ins. Co.*, *supra*, at 832).

On this application, defendant did neither of those two things. Defendant submitted an affidavit from its senior claims analyst that stated that "on or about August 8, 1992, WILLIAM PENN wrote directly to the insured and informed the insured that the policy was being withdrawn in that premium had not been paid". Absent proof of mailing (by certificate or by affidavit of one with personal knowledge) or proof of the office practice in place with regard to mailing notices of cancellation, we find that plaintiff's denial of receipt raises a question of fact about the effectiveness of defendant's purported notice of cancellation that must await determination at trial (*see, Friedman v Allcity Ins. Co., supra,* at 519). Accordingly, plaintiff's motion for summary judgment and defendant's cross motion for summary judgment should have been denied.

Mikoll, J. P., Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's cross motion; cross motion denied; and, as so modified, affirmed.