OPINION OF THE COURT
Harold J. Hughes, J.
Plaintiff moves, pursuant to CPLR 3212, for an order granting it summary judgment. The defendant opposes plaintiffs motion and cross-moves for summary judgment on the ground that the State has spoliated evidence.
Golden Distributors, LTD (Golden) was permitted by the State’s Department of Taxation and Finance (Department) to purchase and resell cigarette tax stamps. Section 472 of the Tax Law allows agents to purchase cigarette tax stamps on credit when authorized by the State. Payment is due within 30 days of purchase. The State will authorize credit purchases only for agents/wholesalers who obtain credit bonds that guarantee payment of the tax stamps.
Defendant International Fidelity Insurance Company (IFIC) provided seven bonds for Golden, which totaled $3,350,000. The bonds had an effective date of September 23, 1988. In October and November of 1990, Golden purchased tax stamps totaling $8,567,281.89. Golden thereafter submitted 69 checks payable to the Department in payment for the stamps. All 69 checks were dishonored.
On December 6, 1990 a supervisor from the Department forwarded a letter to IFIC demanding payment on the seven *597 bonds. IFIC responded by letter dated December 21, 1990 indicating that the bonds had been terminated on November 16, 1989, and declined payment. The Department thereafter conducted a search for the bond cancellation notices. When it failed to locate the seven purported notices, the Department reiterated its demand for payment and on January 17, 1991 requested copies of the cancellation notices together with proof of mailing. Affidavits by Department supervisors and employees state that if the Department had received a notice of cancellation it would have sent a termination letter to IFIC. Termination letters state that the Department would accept termination of the bonds 30 days from the receipt of the notice of cancellation. The Department alleges that no termination letter was sent on the subject bonds, and defendant does not challenge this.
The bonds at issue could be canceled only ‘by the service of written notice by the Surety.” IFIC provided the Department with an affidavit from Dorothy Gaddie, sworn to on February 19, 1991. Ms. Gaddie was employed by IFIC during November of 1989. She stated that she: typed the notices of cancellation for the subject bonds; addressed them to the State Department of Taxation and Finance; placed the notices in envelopes; prepared each envelope for mailing by certified mail, return receipt requested; and then sent each of them to the mailroom to be mailed that day. Ms. Gaddie then states, with significantly less specificity, that she retained file copies of the notices at her desk until she received the green return receipts “signed by whoever signed on behalf of the addressee.” She concludes: “When I received the green cards back I stapled them to each of the Notices of Cancellation and gave them to the Underwriter handling the account, for further disposition and eventual filing.” Ms. Gaddie made no mention of the location of the green receipt cards or whether a search had been made for them.
IFIC has provided the court with an affidavit by Grover L. Wilkins, ostensibly to establish the office mailing procedures of IFIC. In November of 1989, Mr. Wilkins was the supervisor of the Microfilm Section of the National Archives and Records Administration. The relationship of this subdivision to the mailroom and mailroom personnel has not been explained. According to Wilkins, a designated mailroom worker would walk through IFIC’s offices and pick up mail from designated bins. The mailroom personnel would then weigh and meter each item and place the appropriate postage on each envelope. All *598 outgoing mail would be placed in an enclosed pouch provided by the United States Postal Service. The pouch would then be taken to the lobby of the IFIC building, where a Postal Service employee would pick up all of the pouches for all of the tenants in- the building.
For certified mail, IFIC would retain the white slip that contains a unique, nine-digit certified mail number. The white slip also has a space where the addressee’s name and address are to be written. Mr. Wilkins also mentions the green receipt card which accompanies the certified mail item to the post office. The nine-digit number from the white slip is typed on the green card. IFIC would purchase stacks of the white slips for certified mail directly from the post office, typically in groups of 50 to 100.
Wilkins stated that if he could compare the Department’s certified mail log from November of 1989 to white slips retained by IFIC he could “probably determine” whether numbers on the logs came from IFIC. “For example, had a number on the log been only fifty or one-hundred numbers away from a number on one of International’s white slips, it would have been almost certain that the numbers originated from the same stack of white slips, in which case, the number on the log would likely indicate that it originated from International.” Left unsaid is the fact that IFIC, in addition to losing the green return receipt cards, failed to retain the white slips for the certified mail purportedly sent to the Department. Mr. Wilkins would only be able to compare numbers from certified mail sent to other entities during the same time period.
A Department employee, James Bailey, states that the Taxation and Finance mailroom has a log that records incoming certified mail. The mail is solely recorded by the unique nine-digit numbers, and thus does not contain the mailee’s name or address. The November 1989 certified mail logs were destroyed by the Department in November of 1993, pursuant to. regular office procedure. IFIC argues that in destroying logs, the State spoliated evidence, entitling IFIC to summary judgment.
The First Department has held that dismissal of a complaint was warranted where a plaintiff had negligently lost a key piece of evidence which defendants never had an opportunity to examine (Mudge, Rose, Guthrie, Alexander & Ferdon v Penguin Air Conditioning Corp., 221 AD2d 243). Federal courts, in spoliation cases, inquire whether a party was under a duty to preserve the evidence (see, Hasen v Dean Witter Reynolds Inc., 887 F Supp 669). One articulated standard is *599 whether the party “should have known that the destroyed evidence was relevant to pending, imminent or reasonably foreseeable litigation” (Shaffer v RWP Group, 169 FRD 19, 24 [ED NY 1996]).
Here, the Department was not on notice that the November 1989 certified mail logs were relevant or key pieces of evidence to litigation that was reasonably foreseeable. The Department was aware that IFIC was claiming service of notices of cancellation by certified mail, but the Department was not informed until July 9, 1999, that IFIC employees could probably, likely and presumably compare numbers from one of the logs to numbers on certified mail that IFIC had shipped to other entities to determine whether such mail probably, likely or presumably came from IFIC. When requested to provide proof of mailing of the cancellation notices in January of 1991, IFIC did not provide the Department with certified mail green receipt cards, or white slips, or even a range of numbers from the certified mail stacks. Under the circumstances, IFIC has failed to demonstrate that the logs are a relevant piece of evidence or that they were negligently lost or destroyed. The record establishes that the logs were destroyed pursuant to routine office procedures after being retained for a four-year period.
Also, the defendant clearly has not been prejudiced by the loss of the logs (cf, Healey v Firestone Tire & Rubber Co., 212 AD2d 351). The loss has not stripped the defendant of the key piece of evidence or of its useful defenses (see, Kirkland v New York City Hous. Auth., 236 AD2d 170). The key pieces of evidence in this case are the green return receipts and the white mail slips for the notices that were purportedly mailed to the Department. The affidavits from IFIC personnel concerning routine office mailing procedures are also key pieces of evidence. The Department’s actions, therefore, have not “irrevocably stripped” IFIC of useful defenses.
Defendant IFIC next argues that it is entitled to summary judgment because the State cannot rebut the “presumption of receipt” of the cancellations. To create a presumption of receipt IFIC has the burden of describing a standard office procedure used to ensure that items are properly mailed, or provide proof of the actual mailing (Tracy v William Penn Life Ins. Co., 234 AD2d 745). IFIC relies on its routine office practices and standard procedures to create a “presumption of receipt”. The court finds this reliance misplaced in the context of certified mail.
*600 The only New York court to examine the issue held that “where the method of mailing requires the addressee to sign a return receipt, the presumption of receipt which attaches to first class mail is inapplicable, because the mailing cannot be received until the addressee signs for it” (Metropolitan Life Ins. Co. v Young, 157 Misc 2d 452, 454). The certified mail distinction has blanket support in several Federal Circuits (see, e.g., Moya v United States, 35 F3d 501 [10th Cir 1994] [holding that while the law presumes delivery of a properly addressed piece of mail, no such presumption exists for certified mail where the return receipt is not received by the sender]; see also, Mulder v Commissioner of Internal Revenue, 855 F2d 208 [5th Cir 1988]), and at least tacit support in the Second Circuit (see, Matsibekker v Heckler, 738 F2d 79, 81 [2d Cir 1984] [finding that “The government has made no showing or offered any evidence to controvert appellant’s assertion of non-receipt. In that connection, since it is alleged that the October 21st mailing was by certified mail, perhaps some tangible evidence of receipt could have been offered as proof.”]). In examining the underlying presumption and its origin, this court is convinced that the distinction is well taken.
The presumption of receipt has its New York origin in News Syndicate Co. v Gatti Paper Stock Corp. (256 NY 211). There the Court of Appeals held that due proof of mailing and addressing a bill creates a presumption that the bill reached its destination. “The presumption is ‘founded on the probability that the officers of the government will do their duty; and the usual course of business’ ” (News Syndicate Co. v Gatti Paper Stock Corp., supra, at 214, citing Henderson v Carbondale Coal & Coke Co., 140 US 25). In Henderson, the Supreme Court had held that the notion of presumption was “based on the proposition that the post office is a public agency charged with the duty of transmitting letters; and on the assumption that what ordinarily results from the transmission of a letter through the post office probably resulted in the given case” (Henderson v Carbondale Coal & Coke Co., supra, at 37).
When an item is mailed by certified mail, return receipt requested, the post office’s duty would not end with the mere transmission of the letter. After transmitting the letter, the post office must obtain the recipient’s signature on the green receipt card and return the receipt to the sender of the certified mail. The court presumes that what ordinarily results from the transmission of, or failure to transmit, a certified mail letter probably resulted in the given case. Therefore, if the no *601 tices were sent and had been signed for, the post office would have delivered seven green receipt cards to the sender, IFIC. IFIC’s failure to produce the green receipt cards is fatal to their claim of “presumption of receipt”. Clearly, the distinction makes sense. The very reason for transmitting mail by certified mail is to avoid reliance on the presumption of receipt.
In any event, defendant failed to meet their burden of establishing an office practice and procedure which was “geared so as to ensure the likelihood that a notice of cancellation is always properly addressed and mailed” (Nassau Ins. Co. v Murray, 46 NY2d 828, 830). Preliminarily, the cases relied upon by both parties deal with insurance company practices and procedures as to specific documents, namely notices of cancellation, rather than every piece of mail which leaves a party’s office. In such circumstances, parties can point to mailing lists or procedures for comparing names and addresses on lists to envelopes and comparing the total number of individuals on mailing lists to the number of envelopes mailed (see, e.g., Matter of Lumbermens Mut. Cas. Co. [Collins], 135 AD2d 373).
The defendant has set forth some office procedures which IFIC followed for certified and all other mail: an employee would walk through the office and pick up mail from designated bins, would weigh the items and then place them in an enclosed pouch. The pouch would then be taken to the lobby of the building where the Postal Service would pick it up. For certified mail, the white slips would be retained by IFIC. Defendant’s office procedures are simply not sufficiently geared to ensure that bond cancellation notices were properly addressed and mailed (Nassau Ins. Co. v Murray, supra, at 830). There is no mention of any procedure for ensuring that items were properly addressed; further, there is no mention of any procedure for ensuring that the “enclosed pouch” which was left in the lobby was ever picked up by the Postal Service.
Even assuming that the defendant is entitled to a presumption of notice, the presumption would be easily rebutted by the plaintiff. Rebuttal occurs where it has been demonstrated that a routine office practice and procedure has not been followed. Mr. Wilkins clearly stated that for certified mail, the procedure was for IFIC to retain the white slips. The defendant has obviously failed to retain the white slips for the seven bond cancellation notices. Since this office procedure was not followed, any presumption of receipt has been rebutted (Nassau Ins. Co. v Murray, supra, at 830).
*602 The remaining arguments by defendant were found to be without merit.* The bonds clearly provided that cancellation could only be made by providing the Department with written notice. Adequate proof of mailing of cancellations or receipt of cancellations is simply lacking in every conceivable manner. The Department has no record of receiving the cancellations and IFIC has no record of mailing the cancellations. Accordingly, plaintiffs motion for summary judgment is hereby granted in its entirety, and defendant’s cross motion is denied.

 The court found defendant’s allusions over several pages to Ms. Shortis’ alleged behavioral problems and body odor to be bizarre and irrelevant. Counsel would be wise to keep future arguments at least within eyesight of the crucial issues. Such a policy would avoid 57-page memoranda of law on a “presumption of receipt” case.