■ STATE OF NEW YORK, Respondent, v INTERNATIONAL FIDELITY INSURANCE COMPANY, Appellant. (And a Third-Party Action.) [708 NYS2d 504] —Peters, J. Appeals (1) from an order of the Supreme Court (Hughes, J.), entered May 17, 1999 in Albany County, which, *inter alia*, denied defendant's motion to compel discovery, (2) from an order of said court, entered July 29, 1999 in Albany County, which, *inter alia*, granted plaintiff's motion for summary judgment, (3) from the judgment entered thereon, and (4) from an order of said court, entered September 22, 1999 in Albany County, which denied defendant's motion to amend a judgment previously rendered by said court.

Golden Distributors, Ltd. was a wholesale dealer in cigarettes licensed by the Department of Taxation and Finance as a cigarette stamping agent. In accordance with Tax Law § 472 (1), Golden was permitted to purchase cigarette tax stamps on credit from plaintiff if full payment could be remitted within 30 days of purchase. To qualify for this delayed payment option, Golden had to obtain a credit bond, approved by the Department, to guarantee payment of the tax stamps.

In the mid 1980s, the National Association of Tobacco Distributors (hereinafter NATD) began its investigation of a nationwide bonding program which would permit tobacco wholesalers, such as Golden, to satisfy their bonding needs without being required to furnish collateral. Prior to such program being established, Golden obtained seven credit bonds from defendant, effective September 23, 1988, in the total amount of $3,350,000. The language of these bonds, approved by the Department, provided that they could be canceled "by the service of written notice by the Surety upon the State Tax Commission" and that 30 days after service of notification, defendant's liability as a surety would cease.

As a condition for the issuance of these bonds, Golden was charged a first-year premium and was required to furnish, as collateral, a bank letter of credit equal to one half of the total amount of the bonds. It was further advised that there would be an additional premium upon each annual renewal. Bonds were also secured from two other companies—one in the amount of $3,000,000 from Continental Casualty Company (hereinafter CCC) and one in the amount of $3,350,000 from third-party defendant United Pacific Insurance Company of New York (hereinafter UPIC).

From October 1990 to November 1990, Golden purchased tax

stamps in the amount of $8,567,281.89 which it paid for with 69 separate checks. All such checks were subsequently dishonored and Golden thereafter filed for bankruptcy. As the Department did not receive payment for tax stamps purchased during this period, by letter dated December 6, 1990 it demanded payment from defendant as well as all other sureties for the bonded amount.

Defendant declined to remit payment, contending that it had canceled the seven bonds issued to Golden effective December 16, 1989 by its written notification to the Department, sent by certified mail return receipt requested on November 16, 1989. According to defendant, its bonds were canceled at or about the time of renewal since Golden decided to take advantage of the bonding program ultimately offered by NATD in April 1989 through a subsidiary of the Reliance Insurance Company, UPIC (hereinafter the Reliance Program).

After a thorough search of its records, the Department advised that it was unable to locate defendant's purported notices of cancellation. In addition, neither the Department nor defendant could locate either the original or copies of the white certified mail slip, the green return receipt card or the confirmation and release letter that the Department would have routinely sent if it had received the notices of cancellation. Although the Department concluded that the notices had never been received, no further demands for payment were made for six years. In the interim, it collected payment from Golden's other two sureties—$3,000,000 from CCC and $3,373,269.50 from UPIC.*

With a balance remaining on Golden's account, the Department commenced the instant action against defendant and moved for summary judgment. Defendant cross-moved for an order to compel discovery. With respect to the motion to compel, Supreme Court found that defendant's demands were overbroad. Defendant thereafter cross-moved for summary judgment. Supreme Court granted plaintiff's motion for summary judgment, prompting defendant's appeal from the order denying its cross motion and that which granted summary judgment. Defendant also appeals from an unsuccessful motion to amend Supreme Court's judgment based upon a contention that there was an erroneous calculation of interest.

We find that plaintiff, as the movant for summary judgment, initially satisfied its burden of demonstrating entitlement to

---

* The amount recovered from UPIC reflected the receipt of $3,350,000 on one bond but only $23,269.50 on another bond, with a face amount of $3,100,000, predicated upon a fully executed release.

judgment as a matter of law (*see, Alvarez v Prospect Hosp.*, 68 NY2d 320, 324; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853). With the burden thereafter shifting to defendant to "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which [it] rests [its] claim" (*Zuckerman v City of New York*, 49 NY2d 557, 562; *see*, CPLR 3212 [b]), defendant submitted, *inter alia*, the affidavit of its employee, Dorothy Gaddie, sworn to on February 19, 1991, which had been provided to plaintiff when the issue of cancellation was first raised and before the commencement of this action. She attested that on October 6, 1989, she prepared the notices of cancellation to both the Department and the City of New York (hereinafter the City) which also extended credit to Golden for tax stamps secured by bonds issued by defendant. Along with the requisite certified mail paperwork, she averred that she placed the original of each in an envelope properly addressed and forwarded them to the mailroom for mailing that day. At the same time, she stated that she sent the annexed broker's copy of each of the original notices by ordinary mail to the broker handling Golden's account. Although she was later directed to re-mail the notices to the Department, she contended that she retained the file copy of each of the aforementioned notices until she received the signed green return receipt. Upon receiving such signed receipts, she averred that she stapled them to each of the notices and gave them to Robert Adler, the underwriter handling the account, for further disposition and eventual filing.

Adler's affidavit, also presented by defendant, explained that he received a letter from Golden, dated October 4, 1989 and annexed to the affidavit, in which he was informed that it had replaced defendant's bonds with bonds issued by UPIC in the exact same amount. Although they were issued on September 2, 1989, they were made effective as of September 23, 1989—the date on which defendant's bonds were scheduled for their annual renewal and the payment of premium. At Adler's direction, Gaddie prepared the notices of cancellation to both the Department and the City. Both were sent out on October 6, 1989 and copies of the broker's copy of each were annexed to the affidavit. Upon learning that the notices of cancellation to the Department had been sent to the wrong address, Adler directed Gaddie to mail additional notices of cancellation to the Department at the corrected address on November 16, 1989.

On December 19, 1989, 33 days after the notices of cancellation were re-mailed to the Department, Adler averred that he sent a written notice to defendant's collateral department

authorizing the release of Golden's irrevocable letter of credit. Although he contends that he "do[es] not have a specific present recollection of examining the green certified mail return receipt cards for these notices", he states that he "would not have authorized this collateral to be released unless [he] had those cards in [his] possession indicating that both the [Department] and the * * * City had received the notices of cancellation". Again he annexes a copy of his authorization for such release. While acknowledging that defendant is unable to locate both the file copies of the notices of cancellation and the green certified mail return receipt cards, Adler did produce copies of the notices of cancellation and green certified mail return receipt cards sent to the City on the same date. These documents show that these notices of cancellation were, in fact, sent to and received by the City.

Defendant further submitted a cover letter sent to the Department from Golden's vice-president, Brian Manley, dated October 4, 1989, which indicates that it contains "the new credit bonds which are effective as of September 23, 1989". Golden's former president, Lewis Helfstein, reaffirmed that Golden obtained replacement bonds from UPIC in the exact same amounts as those issued by defendant. Finally, defendant notes that in November 1990, Golden filed an adversarial proceeding in Bankruptcy Court naming, as here relevant, plaintiff, UPIC and CCC as defendants. Defendant contends that Golden's failure to name it as a party in that action supports its position that Golden was aware that the bonds issued by defendant had been canceled and that defendant was no longer its surety. As "a court's function on a motion for summary judgment is issue finding, not issue determination" (*Hierro v Bliss Co.*, 145 AD2d 731, 732), we find that sufficient evidence was proffered to establish the existence of a triable question of fact as to whether the bonds issued by defendant had been canceled prior to the time that Golden defaulted on its indebtedness to the State.

Turning briefly to defendant's cross motion for summary judgment seeking dismissal due to plaintiff's destruction of the daily mail log which recorded all of the certified mail received by the Department during the time period at issue, we find that Supreme Court properly denied the motion. While such log contained the certified mail number of each piece of mail received, it did not contain the name or address of the sender; defendant's January 1993 Freedom of Information Law request cannot remotely be interpreted as requesting copies of such log. Hence, in accordance with the Department's standard pro-

cedure, such log was destroyed in late 1992 or 1993. For these reasons, defendant's spoliation assertion fails (*see generally*, *Squitieri v City of New York*, 248 AD2d 201).

Next, by the affidavits and deposition testimony describing the extensive search of the Department's offices over a period of several days and the procedures it followed for mail received and improperly delivered, we find that plaintiff sufficiently rebutted the presumption of receipt (*see*, *Nassau Ins. Co. v Murray*, 46 NY2d 828, 829-830) to have warranted the determination rendered (*see*, *Hantman v Helsmoortel—Thornton Agency*, 224 AD2d 752, 753, *lv denied* 88 NY2d 804). As a final matter, we find no merit to defendant's contention that fault should be attributed to plaintiff for its inability to depose the mailroom clerk employed by the Department during the relevant time period.

Cardona, P. J., Crew III, Rose and Lahtinen, JJ., concur. Ordered that the order entered May 17, 1999 is affirmed, without costs. Ordered that the order entered July 29, 1999 and judgment entered thereon are modified, without costs, by reversing so much thereof as granted plaintiff's motion for summary judgment; said motion denied; and, as so modified, affirmed. Ordered that the appeal from the order entered September 22, 1999 is dismissed, as academic, without costs. [*See*, 181 Misc 2d 595.]