ANNA R. TRAYNOR, Respondent, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY OF BOSTON, MASSACHUSETTS, Appellant.

Submitted January 25, 1937; decided March 9, 1937.

*William B. Moore* for appellant. The evidence offered by the plaintiff as to the manner and time of premium payments wholly failed to prove a waiver or estoppel. (*Conway* v. *Phœnix Life Ins. Co.*, 140 N. Y. 79; *Home*

*Beneficial Assn.* v. *Lomax,* 4 Fed. Rep. [2d] 292; *Crosby* v. *Vermont Accident Ins. Co.* 80 Atl. Rep. 817; *Kœhler* v. *Modern Brotherhood of America,* 125 N. W. Rep. 49; *Thompson* v. *Knickerbocker Life Ins. Co.,* 104 U. S. 252; *Curtin* v. *John Hancock Mut. Life Ins. Co.,* 167 N. Y. Supp. 1041; *Thompson* v. *Fidelity Mut. Life Ins. Co.,* 92 S. W. Rep. 1098; *Marvin* v. *Universal Life Ins. Co.,* 85 N. Y. 278.)

*James F. Conway* and *Jonathan A. Hendrie* for respondent. The waiver by the defendant of the provisions of the policy concerning the prompt payment of premiums being established as a matter of fact it follows as a matter of law that the waiver existed. (*Westchester Fire Ins. Co.* v. *Earle,* 33 Mich. 143; *Pechner* v. *Phœnix Ins. Co.,* 65 N. Y. 195; *Solomon* v. *Vallette,* 152 N. Y. 147; *F. F. Ins. Co.* v. *Norwood,* 69 Fed. Rep. 71; *McElroy* v. *B. A. Assur. Co.,* 94 Fed. Rep. 990; *Beatty* v. *Guggenheim Exploration Co.,* 225 N. Y. 380; *Whipple* v. *Prudential Ins. Co.,* 222 N. Y. 39; *Syracuse Lighting Co.* v. *Maryland Casualty Co.,* 226 N. Y. 25; *Bible* v. *John Hancock M. L. Ins. Co.,* 256 N. Y. 458; *Heffron* v. *Ætna Life Ins. Co.,* 233 App. Div. 534; *Cornell* v. *Travelers Ins. Co.,* 120 App. Div. 459; 192 N. Y. 587; *Knickerbocker Life* v. *Norton,* 96 U. S. 234; *Thomas* v. *Baker,* 60 Fed. Rep. [2d] 1057.) By the date of the last payment under the custom of dealing an equitable estoppel existed which prevented forfeiture for breach of the " payment on the due date " condition with respect to subsequent due payments. (*Met. Life Ins. Co.* v. *Childs,* 230 N. Y. 285; *Rothchild* v. *Title Guarantee & Trust Co.,* 204 N. Y. 458; *DeFrece* v. *National Life Ins. Co.,* 136 N. Y. 144; *Kenyon* v. *K. T. M. M. A. Assn.,* 122 N. Y. 247; *Kadelburg* v. *Hartford Accident & Indemnity Co.,* 223 App. Div. 169; 248 N. Y. 654.) Whether or not the premiums were tendered before the death of the insured is immaterial if the period established by the parties for the payment of premiums had not expired. (*McKenna* v. *Metropolitan Life Ins.*

*Co.*, 220 App. Div. 53; *Durnin* v. *Ætna Life Ins. Co.*, 228 App. Div. 428; *Majestic Life Assur. Co.* v. *Tuttle*, 107 N. E. Rep. 22.)

CRANE, Ch. J.  On March 6, 1929, the defendant issued a policy of insurance in the industrial form upon the life of Edward L. Traynor, in which the plaintiff was named beneficiary.  The policy was in the face amount of $430 and contained a provision for the payment of double indemnity in the event that the death of the insured should result from bodily injuries, sustained through external, violent and accidental means.

The insured died on December 26, 1930, as a result of injuries sustained in an automobile accident.  The plaintiff sued to recover the sum of $860, representing the face amount, and double indemnity, under the policy.  The defendant has resisted payment on the ground that at the death of the insured there was no insurance in existence, as the deceased had failed to comply with his contract. The policy reads: " The John Hancock Mutual Life Insurance Company of Boston, Massachusetts in Consideration of the payment of the premium stipulated herein on or before each Wednesday during the continuance of this policy until premium payments cease by the terms hereof, grants this Endowment insurance with the privileges and benefits and subject to the conditions and provisions on this and the three following pages which are hereby made a part of this contract and constitute the entire contract between the parties hereto."

The age of Edward L. Traynor, the insured, was twenty-one years, the weekly premium fifty cents; the beneficiary was his mother, Anna R. Traynor.  Upon the payment of the premiums for a period of twenty years the company agreed to pay the amount due as an endowment, which was $430, or to pay the same amount if the insured died before twenty years, and the premiums had been duly paid until death.

On the second page of the policy are found the following conditions: " Reinstatement. At any time within one year from default in payment of premiums, if the cash surrender value has not been paid or the extension term expired, this policy may be reinstated upon production of evidence of insurability satisfactory to the Company and approved at its Home Office, and upon payment of arrears of premiums and payment or reinstatement of any indebtedness hereon or secured hereby.

" Period of Grace. This policy will be paid subject to its conditions if the Insured die while premiums are in arrears not more than four weeks, but neither this concession nor the acceptance of any overdue premium shall create an obligation on the part of the Company to receive premiums which are in arrears, nor shall it be a waiver of their payment on Wednesday of each week in advance."

The insured died on December 26, 1930. The last premium paid was on October 29, 1930. The four weeks' period of grace extended the insurance to November 26th when, according to the terms of the policy, the insurance expired and the policy terminated or was out of benefit. This is conceded. These facts are admitted by the plaintiff for she bases her right to recover upon a theory of waiver or estoppel. We, therefore, start the discussion of this case with the statement that the insured agreed to pay fifty cents a week every week for the benefit under the insurance policy. By its terms he had four weeks' period of grace within which to pay his delayed premium, but after that period benefits ceased and there could be no recovery. The insured died on December 26, 1930, or thirty days after the expiration of the period of grace and the termination of the policy.

The claim of the plaintiff, which she has successfully pressed in the courts below, is that the company, by previously accepting payments of premiums beyond the days of grace, had waived the provisions of the policy

regarding payment of premiums and, therefore, was obliged to accept past-due premiums even after the death of the insured.

In this case, as we have stated, the period of grace for the payment of the due premiums had expired; four weeks had gone by. The insured died, and the beneficiary, after his death, tendered the amount of the premiums due, and insists that this reinstates or keeps alive the policy or, in other words, that the company was obliged by reason of its course of conduct to accept these past-due premiums after the death of the insured without the benefit of a physical examination or any assurance of continued health.

What is this course of conduct which nullifies the provisions of the policy in favor of the insurance company? It is that on January 29, 1930, the insurance company accepted the premiums due for the previous seven weeks; that on April 3, 1930, it accepted payment of premiums due for the previous eight weeks; that on June 6, 1930, it received payment of premiums due for the previous eight weeks, including an advance premium for June 11th; that the payment of June 24th took care of two weeks; and that the last payment, October 29th, was accepted in payment of premiums previously due for ten weeks; in other words, the company did not insist upon the premiums being paid every week on the day due. It did not terminate the policy with the non-payment of premium on the due date; it exercised its privilege which it had of continuing or restoring the policy when the back premiums were paid up. I cannot find, however, any evidence that the company by so doing agreed, or impliedly agreed, that it would thereafter let a policy ride or continue until the beneficiary felt inclined to pay the premiums. At any time it could refuse to take past-due premiums and insist that the four weeks' grace period ended all benefits unless the premiums were paid within that time.

By the reinstatement clause, above quoted, the company might within one year after default reinstate the policy

" upon production of evidence of insurability satisfactory to the Company and approved at its Home Office." The company could reinstate the policy without requiring this evidence, and such it had done, but this did not indicate to the insured that it would always be done without evidence of insurability. In the plainest language the insured had agreed with the company, in the " period of grace " clause, that neither the concession of four weeks' grace period in which to pay past-due premiums " nor the acceptance of any over-due premium shall create an obligation on the part of the Company to receive premiums which are in arrears, nor shall it be a waiver of their payment on Wednesday of each week in advance." Are we to eliminate this provision altogether which was made to cover the very facts of this case? It is as if the company had said to the insured on October 29, 1930, or on any of the other days when it received back payments, " We will accept these past-due premiums, but you agree that our doing so will create no obligation on the part of the company to hereafter receive premiums which are in arrears, nor shall it be a waiver for the future of the requirements as to premium payments." What else could this clause possibly mean?

This is the policy of insurance and its conditions which, as we have said in many cases, must be read like any other contract and agreement. The company received over-due payments, but such acts created no obligation to receive future overdue payments. This is a clear and concise part of the insured's agreement. Therefore, when the payments due October 29, 1930, were not paid within the four weeks' period of grace there was no obligation upon the part of the company to accept them after death.

A case somewhat like this is *Thompson* v. *Insurance Co.*, (104 U. S. 252, 259), wherein Mr. Justice BRADLEY said, regarding the receipt of default payments, the following: " The last replication sets up and declares that it was the usage and custom of the defendants, practised

by them before and after the making of said note, not to demand punctual payment thereof at the day, but to give days of grace, to wit, for thirty days thereafter; and they had repeatedly so done with Thompson and others, which led Thompson to rely on such leniency in this case. This was a mere matter of voluntary indulgence on the part of the company, or, as the plaintiff herself calls it, an act of ' leniency.' It cannot be justly construed as a permanent waiver of the clause of forfeiture, or as implying any agreement to waive it, or to continue the same indulgence for the time to come. As long as the assured continued in good health, it is not surprising, and should not be drawn to the company's prejudice, that they were willing to accept the premium after maturity, and waive the forfeiture which they might have insisted upon. This was for the mutual benefit of themselves and the assured, at the time; and in each instance in which it happened it had respect only to that particular instance, without involving any waiver of the terms of the contract in reference to their future conduct. The assured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions. If it were otherwise, an insurance company could never waive a forfeiture on occasion of a particular lapse without endangering its right to enforce it on occasion of a subsequent lapse. Such a consequence would be injurious to them and injurious to the public."

The weakness of the plaintiff's contention is obvious when we inquire as to the nature of this new obligation to receive default payments. For how long a time could the insured delay his payments and yet keep alive his insurance? For how long a time could the beneficiary delay payment of past-due premiums after the insured's death? In other words, what was the limit to the obligation? The past delays were not always of the same length of time. One was two weeks, another six, one

eight, and still another ten. Can we say that the obligation continued for ten weeks after default because in one instance the company had not considered the policy terminated? Again, if we say it were a reasonable time, what would constitute a reasonable time under these circumstances? This is not a case like many cited by the respondent, where strict compliance with the time of payment has not been insisted upon and the insured was thereby led to believe that payment within a reasonable time would be satisfactory, especially as it had been so considered in the past. (*De Frece* v. *National Life Ins. Co.*, 136 N. Y. 144; *Kadelburg* v. *Hartford Accident & Indemnity Co.*, 223 App. Div. 169; affd., 248 N. Y. 654.) This is a case where the policy *specifically* provides that such indulgence shall not bind the company to like indulgence in the future, and that any subsequent delay in payment after the period of grace gives the company the right to consider the insurance terminated.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; HUBBS, J., taking no part.

Judgments reversed, etc.