Gibson, J.
 

 The appeal requires us to determine the rights of a trustee and the trust remaindermen as against an insurer, under a life insurance policy assigned to the trustee by the insured. More particularly, the issue concerns the effect of the insurer’s purported but concededly void rescission of the policy,
 
 without
 
 notice to the assignee, and the omission of the insurer, in apparent reliance upon its ineffective rescission, to give notice to the assignee of premiums subsequently becoming due. The issue was decided in this accounting proceeding brought by the trustee in the Surrogate’s Court and the decree entered in favor of the trustee was reversed upon appeal. We have concluded that the order of the Appellate Division should be reversed and the decree of the Surrogate’s Court reinstated. The facts were stipulated and will here be outlined.
 

 The testatrix died on October 2, 1957. By her will she created a trust, to consist of her residuary estate, the net income from which was to be payable to her son, Bruce Wilcox Preston, and the corpus to be transferred to him should he survive for 10 years after testatrix’s death. Should he die within that period, the corpus was to be distributed to other designated remainder-
 
 *367
 
 men. Preston and William L. Schrauth, the present appellant, were appointed trustees and qualified as such.
 

 On May 16, 1961 respondent Equitable issued to Preston a policy of insurance upon his life in the amount of $20,000. On July 26, 1961 an instrument executed by Preston and assigning the policy to Preston and Schrauth, as executors and trustees under the will, was transmitted to Equitable. By letter of August 9, 1961, Equitable acknowledged receipt of the assignment as effective “to vest title in and to the policy in said assignees as executors and trustees ”, and it is conceded that such was indeed the effect. The policy was returned to Schrauth and it remained in his sole possession.
 

 At some time prior to the assignment, Schrauth had discovered that Preston had embezzled trust funds to an amount in excess of $16,000
 
 [1]
 
 ; and it is clear that the purpose of the assignment was to secure the repayment of the defalcation should Preston fail to survive the remaining term of the trust, which then had some six years and two months to run. The possibility of Preston’s survival and the consequent offset of his debt dissipated upon his death on December 20,1966.
 

 "Upon issuance of the policy now questioned, Preston paid the first quarter-annual premium. The second premium, due August 1, 1961, was paid by his check, which Schrauth transmitted to Equitable with the policy assignment. This was the last premium paid.
 

 On August 18, 1961, Equitable served upon Preston alone a notice of rescission, asserting that his policy application contained material misrepresentations and that the first premium was not paid during his good health. Equitable tendered back the premiums paid but Preston declined the tender. Subsequently, however, Preston acquiesced in the rescission and on December 28, 1961 was refunded the two premiums paid. Although knowing that it had, on August 9, 1961, returned the policy to the assignee Schrauth, Equitable excused Preston’s failure to surrender it on the strength of an affidavit in which Preston falsely stated that the policy had been lost or stolen from his automobile. Schrauth continued to hold the policy
 
 *368
 
 and did not learn of the purported rescission or of Preston’s subsequent failure to pay premiums until after presentation of his claim for payment of the policy, following Preston’s death.
 

 It is conceded that the purported rescission was ineffective and void and, further, that at no time did Equitable give Schrauth any notice of premiums due (Insurance Law, § 151).
 

 Appellant trustee’s claim under the policy was tried in the course of this accounting proceeding and was resisted by Equitable on the basis of the asserted rescission. Finding the attempted rescission void, the 'Surrogate held for the trustee. Upon reargument had at its instance, Equitable advanced, for the first time, the contention that the policy had lapsed for nonpayment of premiums. Upon the reargument, the court adhered to its original decision, in substance; but, upon appeal, the Appellate Division reversed, holding that, whether or not there had been an effective rescission, the policy had lapsed for failure to pay premiums. The weight of authority, however, is to the contrary.
 

 Correctly noting that since forfeiture for nonpayment of premiums is not favored in law and will not be enforced, absent a clear intention to claim that right, a leading text writer finds that
 
 “
 
 acts and conduct which are insufficient to constitute a technical estoppel against such a forfeiture, may be sufficient to effect a waiver ’ ’ and that ‘ ‘ the right to forfeit a policy is waived where the insurer’s act or omission caused the insured justly to believe and to act on the belief that the contract was continued in force.” (15 Appleman, Insurance Law and Practice,- § 8403, p. 220.) Thus, the author notes that “ an accident insurer denying liability for death benefits on the ground of cancellation could not, after the commencement of an action on the policy, interpose the defense that the policy terminated for nonpayment of premiums ” (15 Appleman,
 
 op. cit.,
 
 § 8411, p. 238, citing
 
 Moore
 
 v.
 
 Washington Nat. Ins. Co.,
 
 135 Neb. 29). Similarly, in
 
 Anagnost
 
 v.
 
 Metropolitan Life Ins. Co.
 
 (205 S. C. 465) it was held that the. cancellation of a policy, even if wrongful, is tantamount to a refusal to accept a premium even if tendered and thus there is a waiver of any claim of policy lapse. From these statements of general principles we turn to the decisions below.
 

 
 *369
 
 The Surrogate found that “ Equitable had notice of the assignment of this policy and its attempt to effect a rescission without notice to the assignees was the factor that induced the non-payment of premiums. It follows that Equitable is liable on the policy [citations].” The basis of the reversal at the Appellate Division was expressed thus: “Schrauth was not prejudiced by Equitable’s failure to notify him of the unilateral rescission and subsequent surrender. But for this very omission, the rescission would have been effective. Moreover, even if Schrauth had been notified of the surrender, he could not have kept the policy in force by himself paying the premiums. Having rescinded the policy, Equitable would have refused a tender of premiums.” (32 A D 2d 110, 114-115.) We cannot appraise as anything more than speculative either the suggestion that a valid rescission would have followed inevitably upon notice to Schrauth and nothing more, or the court’s conclusions as to what one party or the other might have done under other circumstances. Thus, it cannot truly be said that Schrauth sustained no prejudice and could have taken no protective action had he been given the notice to which he was entitled. On the contrary, he might have resisted rescission on the ground that Preston’s application contained no misrepresentation or none that was material. Resistance would perhaps have impelled Equitable to litigate its claim, and this before expiration of the two-year period of contestability. Equitable might or might not have taken timely action; and might or might not have succeeded upon a trial of the merits. In either case, Schrauth would at least have had the opportunity to pursue Preston’s liability further. Thus, it is far from conclusive that Schrauth, once put on notice, would have been bereft of all remedy or defense, as the Appellate Division hypothesized. To conclude, as did that court, that notice to Schrauth would have served no useful purpose anyway is implicitly to predetermine the merits of a valid attempt to rescind, and to revive the effect of the once-discredited rescission. So, too, we may not conjecture the result of Equitable’s giving notice of premium due, had the policy remained in effect without prior rescissive action, as the simple fact is that the case was never in that posture.
 

 As an additional basis for its denial of relief, the Appellate Division found Schrauth guilty of neglect, in at least some
 
 *370
 
 degree; but it seems rather clear that of the three concerned— Schrauth, Preston and Equitable — Schrauth alone was free of fault. Thus we find unconvincing the rationale, and the circular argument, that would excuse Equitable because no premiums were forthcoming, following its wrongful attempt to rescind; when, indeed, the supposed rescission may well have been the cause of the nonpayment. Equitable had considered the policy dead on grounds completely unrelated to defaults in payment and its present salvage efforts proceed upon a theory totally foreign to that upon which it acted and, indeed, that upon which it originally defended the trustee’s claim. Its procedures do not, however, require legal evaluation inasmuch as the substantive authorities require reversal in any event.
 

 Thus, in
 
 Stilwell
 
 v.
 
 Mutual Life Ins. Co.
 
 (72 N. Y. 385), the insured, upon being taxed with misrepresentations in his application, surrendered a policy without notice to the beneficiary-owner, and the court set aside the surrender and cancellation, as made without authority, and denied effect to the insurer’s refund of the premium paid. Even more closely in point is the decision in
 
 Whitehead
 
 v.
 
 New York Life Ins. Co.
 
 (102 N. Y.
 
 143).
 
 There, too, a purported rescission was void as made without notice to the beneficiaries-owners; and there, too, the insurer, following the death of the insured, asserted a forfeiture for nonpayment of annual premiums accrued subsequent to the attempted rescission; but “ [n]o notices were sent either to the insured or to the children, and the company by the wrongful possession and cancellation of the policies, and by their agreement of surrender, did an act, the tendency and purpose of which was to prevent future payment by the parties interested ” and, as the court continued, the company could not “depend upon a default to which its own wrongful act contributed, and but for which a lapse might not have occurred ” (p. 156). The court below distinguished
 
 Dulberg
 
 v.
 
 Equitable Life Assur. Soc.
 
 (277 N. Y. 17) as involving an attempted forfeiture for nonpayment of premium, but there the company was found at fault for unduly delaying presentation of the insured’s check issued in payment until after expiration of the grace period and the court reiterated the principle that is controlling here, stating (p. 24): “ It is a familiar principle that
 
 ‘
 
 he who pre
 
 *371
 
 vents a thing being done cannot avail himself of the non-performance he has occasioned.’
 
 (Homer
 
 v.
 
 Guardian Mut. Life Ins. Co.,
 
 67 N. Y. 478, 481.) Neither may an insurance company depend upon a default in which its own negligence or wrongful act contributed, and but for which a lapse might not have occurred.
 
 (Whitehead
 
 v.
 
 New York Life Ins. Co.,
 
 102 N. Y. 143, 156;
 
 Knickerbocker Life Ins. Co.
 
 v.
 
 Pendleton,
 
 112 U. S. 696. See, also,
 
 Smith
 
 v.
 
 Miller,
 
 [43 N. Y. 171; 52 N. Y. 545]
 
 supra.)
 
 ” Equally mistaken is respondent’s reliance upon
 
 Ruckenstein
 
 v.
 
 Metropolitan Life Ins. Co.
 
 (263 N. Y. 204, mot. for rearg. den. 264 N. Y. 464), in which, differing from the case at bar, there was, in legal effect, notice to the insured, and to the irrevocable beneficiary as well, of a premium due, which the insured failed to pay. Indeed, the conclusion stated in
 
 Ruckenstein
 
 completely undercuts Equitable’s position here, the court (p. 207) holding: “It cannot be said that default in this case was brought about by any wrongful act of the insurance company but for which a lapse might not have occurred. Had that been the case, the result might be different. Fraud or lack of authority to surrender is at times properly invoked when the company is aware of the attempt to cut off the rights of the beneficiary-owner.
 
 It cannot then claim a lapse for non-payment of premiums
 
 ” (emphasis supplied).
 

 In sum, then, Schrauth was entitled to notice of rescission, and, the rescission being void, to notice of premiums due upon the subsisting policy, but he received neither. Equitable would discount this dual breach of obligation by futile conjecture as to what Schrauth could or would have done had he been given the notice to which he was entitled. The simple fact is that he was not afforded the opportunity to do anything.
 

 The order appealed from should be reversed, with costs, and the decree of the Surrogate’s Court reinstated.
 

 Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
 

 Order reversed, etc.
 

 [1]
 

 . As a result of his embezzlements, Preston was removed as executor and trustee, pursuant to a decision of the Surrogate’s Court rendered May 7, 1962.