■ MARDOQUEO I. SALOMON et al., Appellants, v E. & W. BLANKSTEEN AGENCY, INC., et al., Respondents.—Order, Supreme Court, New York County (Parness, J.), entered June 28, 1985, which granted summary judgment to defendants and dismissed the complaint, unanimously reversed, on the law, the motion is denied and the complaint is reinstated, with costs.

Defendant David Blanksteen, an insurance broker with the E. & W. Blanksteen Agency, Inc. (Blanksteen Agency), mailed a two-page solicitation letter and application to plaintiff Mardoqueo I. Salomon, a physician, and other individual members of the New York County Medical Society. The letter advised that a "new, improved" "Quarter Million Dollar Major Expense Plan" was available with defendant Nationwide Life Insurance Company under the auspices of the Bronx County Medical Society. The program was similar to the policy Dr. Salomon had with National Casualty Company as a member of the New York County Medical Society, in that it afforded basic coverage, with a "Quarter Million Dollar" excess rider at higher premiums. He had elected only basic coverage. How-

ever, Nationwide's program also offered individuals ineligible for Medicare the option of obtaining coverage for professional fees (physician's and surgeon's fees) for still higher premiums. The "Quarter Million Dollar Plan" actually provided for $265,000 in coverage for major medical expenses, consisting of $15,000 basic coverage plus an additional $250,000 in umbrella coverage.

Dr. Salomon transferred to the Bronx County Medical Society and, in October 1977, purchased a "Quarter-Million Dollar Expense Policy, Plan M S" for himself and his wife, coplaintiff Sophie Salomon. The application indicated their birth dates, and thus, their ages, 71 and 67 years of age, respectively. The policy was then issued and thereafter renewed in November 1978. Plaintiffs concededly did not read the policy, but relied upon the solicitation materials. They initially received a $22 rebate on the $412 premium, representing a deduction they had claimed for Dr. Salomon but had neglected to claim for his wife, based upon eligibility for Medicare. Despite the Medicare deduction, the premium was higher for the quarter million dollar plan than it would have been for the basic $15,000 coverage.

In May 1979 Dr. Salomon suffered a stroke and was hospitalized. Thereafter, he was gravely ill with a heart condition until his death in November 1984. His medical expenses were chiefly for home care nursing. Defendants reimbursed $15,000 in expenses, but disclaimed liability under the umbrella portion of the policy. This action ensued. Special Term granted defendants' motion for summary judgment dismissing the complaint.

The drastic remedy of summary judgment should not be granted where there is any question as to the existence of a triable issue of fact. (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978].) It is fundamental that terms of an insurance policy, particularly exclusionary terms, which are ambiguous or subject to more than one reasonable construction, must be construed most favorably to the insured and most strictly against the insurer. (*Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.*, 34 NY2d 356, 361 [1974]; *Lo Tempio v Safeco Ins. Co.*, 71 AD2d 799, 800 [4th Dept 1979].) Although the umbrella benefit portion of the policy states that the benefit period terminates, *inter alia,* upon eligibility for Medicare, the solicitation documents are not free from ambiguity, and thus, there are triable issues of fact precluding summary judgment. (*Perfect Film & Chem. Corp. v Honey*, 32 AD2d 900, 901 [1st Dept 1969].) Plaintiffs were entitled to rely upon the representa-

tions in the solicitation materials as part of the insurance contract binding the insurer. *(Weinberg v Insurance Co.,* 88 Misc 2d 82, 83 [App Term, 1st Dept 1976].)

Special Term engaged in issue determination, rather than issue finding, inappropriate on a motion for summary judgment, in concluding that there was no material variance between the solicitation materials and the policy. *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404 [1957].) The section entitled "Renewal" on page 2 of the application contains the only direct reference to Medicare eligibility in the solicitation documents. It reads as follows: "RENEWAL: As long as your Society's Plan remains in force and you are a member of the Society and pay the required premium, your insurance cannot terminate. Modified coverage continues upon eligibility for Medicare. Similarly, dependent insurance".

The phrase "[m]odified coverage continues", relied upon by defendants as a clear exclusion, is highly ambiguous, particularly when read in the context of the paragraph in which it appears. The paragraph has a uniformly positive and reassuring, rather than a cautionary, tone which would alert a prospective insured to an exclusion. *(See, Craver v Union Fid. Life Ins. Co.,* 37 Ohio App 2d 100, 307 NE2d 265 [Ct App 1973].)* The ambiguity of the phrase further appears when it is read in conjunction with the section entitled "Exclusions" and the summary of major charges in the program on page two of the solicitation letter. The "Exclusions" section is parallel to and juxtaposed with the "Renewal" section. It lists expenses not covered, but does not state that any category of persons is ineligible for umbrella coverage. Page 2 of the solicitation letter that lists "Maximum Benefit" as one of the *major changes* in the program represents that "[t]he total benefit has been increased from $250,000 to $265,000 ($15,000 Basic, plus $250,000 Umbrella)."

We agree with plaintiffs' contention that there is a substantial issue of fact as to whether the phrase "[m]odified coverage continues" was fairly subject to another construction besides the exclusionary one proposed by defendants. An average, not an unusually sophisticated or trained reader could well have understood "[m]odified coverage continues" to mean that umbrella coverage continued except insofar as it overlapped Medicare coverage. *(See, Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.,* 60 NY2d 390 [1983].) It would have been a simple thing for defendants to say, as they do now in their revised solicitation letter, under a section entitled "Medicare", that "[t]here is no Quarter Million Dollar coverage * * * for those

eligible for Medicare." *(See, Craver v Union Fid. Life Ins. Co.,* 35 Ohio Misc 15, 298 NE2d 918, 920 [Common Pleas Ct, Hamilton County 1973].)*

We further agree with plaintiffs' contention that triable issues of fact are presented as to whether the doctrine of equitable estoppel prevents defendants from asserting the defense of exclusion of coverage and whether Blanksteen Agency was negligent in not procuring coverage upon which it caused plaintiffs to rely. *(See, Brady v Fidelity & Cas. Co.,* 19 AD2d 237 [3d Dept 1963]; *Weinberg v Insurance Co., supra.)* Plaintiff Sophie Salomon submitted the affidavit of her daughter Ruth King as proof that certain Blanksteen Agency employees had reassured the latter, had acknowledged Dr. Salomon's coverage under the umbrella portion of the policy, and had encouraged the hiring of registered nurses rather than less expensive practical nurses. Special Term should have accepted as true, for purposes of a summary judgment motion, plaintiff's proof of conversations between her daughter and Blanksteen Agency employees. *(Strychalski v Mekus,* 54 AD2d 1068, 1069 [4th Dept 1976].)* Concur—Sandler, J. P., Carro, Asch, Kassal and Rosenberger, JJ.