Carol B. SPEZIALE, as Administratrix of the Estate of Thomas A. Speziale and Carol B. Speziale, Individually and as Beneficiary, Plaintiff,

v.

NATIONAL LIFE INSURANCE COMPANY, Defendant.

No. 1:02–CV–0784.

United States District Court, N.D. New York.

July 1, 2004.

Orlando, Barbaruolo Law Firm, Albany NY (Ronald B. Orlando, of counsel), for plaintiffs.

Shapiro, Reilly Law Firm, New York NY (Barry I. Levy, of counsel), for defendant.

### MEMORANDUM—DECISION and ORDER

KAHN, District Judge.

## I. INTRODUCTION

Plaintiff Carol B. Speziale commenced the instant action against Defendant National Life Insurance Company asserting claims of breach of contract, unjust enrichment, equitable estoppel, and a violation of N.Y. Gen. Bus. Law § 349 arising out of Defendant's denial of Plaintiff's claim under a life insurance policy issued to her deceased husband, Thomas Speziale. By Decision & Order dated March 19, 2003, Plaintiff's claims under N.Y. Gen. Bus. Law § 349 and for punitive damages were dismissed. Presently before the Court is: (1) Defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 seeking dismissal of the Complaint in its entirety; and (2) Plaintiffs' cross-motion for summary judgment seeking a determination of liability as a matter of law.

## II. FACTS

Thomas Speziale purchased a term life insurance policy from Defendant with an inception date of March 22, 1999. Def.'s Ex. D. Plaintiff was the named beneficiary. The policy had the following provisions pertinent to the instant dispute:

> **Entire Contract.** This policy and a copy of the application which is attached ... are the entire contract.... Any change of this contract must be written and may be made only by one of our authorized officers....

**Payment of Premiums.** The First Premium and its interval are shown in the Data Section. It is due on the Policy Date. Each later premium is due at the end of the interval of time for which the preceding premium was paid....

**Lapse and Grace Period.** If any premium due is not paid on or before the day it is due, this policy shall lapse as of such date. All our liability shall then cease. However, a grace period of thirty-one days from the due date, during which the insurance shall stay in force, shall be allowed for the payment of every premium except the first....

**Reinstatement.** If this policy has lapsed, upon request it may be reinstated within five years of the date it lapsed. However, it may not be reinstated after the Final Expiration Date. We will require proof to our satisfaction that the insured is insurable. We will also require the payment of:

1. the premium for the period from the date of reinstatement to the next premium due date; plus

2. the lesser of:

    a. half of all premiums for the period from the date of lapse to the date of reinstatement; or

    b. the premiums for the one year period prior to the date of reinstatement.

**Death Benefit.** .... We will pay the Death Benefit to the Beneficiary when we receive at our Home Office due proof that the Insured died while this policy was in force....

Def.'s Ex. D. Thomas Speziale opted to make premium payments on a monthly basis. *Id.*

By letter dated June 1, 1999, Defendant wrote Mr. Speziale advising him that the policy lapsed due to non-payment of premiums. Def.'s Ex. G. The letter read, in part, that

> since the 31 day grace period has expired, your policy has lapsed. The policy may be reinstated without any interest penalty or evidence of insurability by paying the "amount due" while the Insured is still living and within 62 days of the due date. Therefore, payment of $209.43 for the April premium must be submitted by June 22, 1999 ... or reinstatement requirements will be necessary.

*Id.* It appears that Mr. Speziale made the necessary payments to bring his premiums up to date. Def.'s Ex. F.

By letter dated March 22, 2000, Defendant wrote Mr. Speziale concerning unpaid premiums.[1] The letter read, in part, as follows:

> THANK YOU FOR YOUR RECENT PAYMENT. ALTHOUGH YOUR REMITTANCE WAS RECEIVED WITH THE MARCH PREMIUM NOTICE, OUR RECORDS SHOW THAT THE FEBRUARY PREMIUM WAS UNPAID. CONSEQUENTLY WE HAVE

---

1. The facts concerning the March 22, 2000 letter are set forth at paragraph 19 of Defendant's Statement of Material Facts. In support of the statement, Defendant cites to a copy of the March 22, 2000 letter. In response, Plaintiff merely denied the statement, without providing any citation to the record where the factual issue arises, as required by N.D.N.Y.L.R. 7.1(a)(3). The Rule clearly provides that *"[a]ny facts set forth in the Statement of Material Facts shall be deemed ad-* mitted unless specifically controverted by the opposing party." (emphasis in original). Plaintiff failed to properly controvert paragraph 19 of Defendant's Statement of Material Facts. The Court does note, however, that Defendant has set forth numerous assertions of fact throughout its Statement of Material Facts that are not supported by citations to the record. *See, e.g.,* Def.'s SMF at ¶ 21. In those instances, the Court has disregarded Defendant's factual assertions.

APPLIED YOUR REMITTANCE TO THE UNPAID PREMIUM....

IN ORDER TO BRING YOUR CONTRACT TO A CURRENT STATUS, WE ARE ENCLOSING ANOTHER PREMIUM NOTICE WITH A RETURN ENVELOPE TO FACILITATE PAYMENT....

IF THIS INFORMATION DOES NOT AGREE WITH YOUR RECORDS, PLEASE NOTIFY U.S. AT YOUR EARLIEST CONVENIENCE.

Def.'s Ex. H. Defendant sent Mr. Speziale a similar letter dated April 19, 2000.[2] That letter provided, in part, that "[a]lthough your remittance was received with the April premium notice, our records show that the March premium was unpaid." Def.'s Ex. I.

Mr. Speziale died on February 1, 2002. The next day, February 2, 2002, Mrs. Speziale signed a check payable to Defendant in the amount of $209.43.[3] Defendant received the check sometime thereafter. Plaintiff also provided Defendant with notice of the death.

Defendant established a claim file and assigned the matter to Caroline Buswell. Upon her review of the file, Buswell determined that the policy was paid through December 22, 2001 and that there were $418.86 in unpaid premiums (i.e., two months of unpaid premiums). Buswell also determined that the policy had a thirty-one day grace period and that the final payment on the policy was made after Mr. Speziale's death. Buswell concluded that the policy had lapsed prior to Mr. Speziale's death and, therefore, no payments were due. Plaintiff denies that the premiums were in arrears and that the policy had lapsed.

By letter dated February 15, 2002, Buswell informed Plaintiff that "the ... policy was not inforce [sic] on the date of your husband's death. On February 1, 2002 the paid to date on the policy was December 22, 2001. This paid to date was not within the thirty-one day grace period. We received a premium payment on February 5, 2002, ... the check is dated after your husband's death." Def.'s Ex. M. Defendant also provided Plaintiff's attorney with a summary of all premium payments made by Mr. Speziale. Defendant returned to Plaintiff the February 2, 2002 premium payment.

Plaintiff then commenced the instant action seeking payment under the terms of the policy. Defendant now moves for summary judgment pursuant to Fed.R.Civ.P. 56 seeking dismissal of the Complaint in its entirety. Plaintiff cross-moves for summary judgment.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir.2001) (quoting *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir.2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is

---

2. *See* n. 1, *supra*.

3. The monthly premium payment was $209.43.

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown*, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

## IV. DISCUSSION

### a. *Breach of Contract*

Defendant first moves to dismiss the breach of contract claim on the ground that, under the plain terms of the contract, it is not required to pay a death benefit.

Under New York law, "'when parties set down their agreement in a clear, complete document, their writing should ... be enforced according to its terms'." *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 775 N.Y.S.2d 765, 807 N.E.2d 876 (2004) (quoting *W.W.W. Assoc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990)). Absent any ambiguity in the contract, a court looks "solely to the language used by the parties to discern the contract's meaning." *Id; see National Granite Title Ins. Agency, Inc. v. Cadlerock Properties Joint Venture, L.P.*, 5 A.D.3d 361, 773 N.Y.S.2d 86, 87 (2d Dep't 2004).

Here, neither party claims any ambiguities in the policy. The policy plainly provides that the premium payment "is due at the end of the interval of time for which the preceding premium was paid." It is undisputed that Mr. Speziale paid his premiums on a monthly basis. Each premium payment covered a one month period and an additional premium payment was due at the end of that period. In this case, the premium was due on or before the twenty-second day of each month. The policy did contain a grace period for late payments. According to the policy, "[i]f any premium due is not paid on or before the day it is due, this policy shall lapse as of such date. All our liability shall then cease. However, a grace period of thirty-one days from the due date, during which the insurance shall stay in force, shall be allowed for the payment of every premium except the first." Pursuant to the plain terms of these provisions, Mr. Speziale could have paid his premiums up to thirty-one days after the due date, after which time the policy would lapse. Stated otherwise, if no premium is received within thirty-one days of the due date, the policy lapses. Once the policy lapses, it may be reinstated only upon request, proof of insurability, and the making of certain payments.

Defendant offers evidence in the form of letters sent to Mr. Speziale, the testimony of Buswell, and the summary of premium form that, as of February 22, 2000, Mr. Speziale missed a month's premium payment. Defendant applied each subsequent premium payment received from Mr. Speziale to the amount in arrears. Thus, when Defendant received a premium payment in late March 2000, it applied that amount to the February 2000 premium, thereby leaving an amount due and owing for March 2000. This process continued onward. When Defendant received a premium payment in April 2000, Defendant applied it to the March 2000 premium, leaving an amount due and owing for April 2000, etc. According to the evidence submitted by Defendant, Mr. Speziale never made up the deficiency such that, at the time of his death, the policy had only been paid up through December 22, 2001. The evidence in the record reveals that the last premium payment before Mr. Speziale's death was made on or about January 3, 2002. Because of the premium arrears, Defendant

applied the January 3 payment to the November 2001 premium, leaving the premiums due in December 2001 and January 2002 unpaid at the time of death.

In response, Plaintiff has failed to demonstrate a triable issue of fact whether all required premiums had been paid. Although Plaintiff denies that the premiums were in arrears, she has presented no evidence to create a genuine issue of fact whether the payments were made. *See Elston v. Allstate Life Ins. Co. of New York*, 274 A.D.2d 938, 939, 712 N.Y.S.2d 185 (3d Dep't 2000). Plaintiff points to Mr. Speziale's check register and his handwritten notation on the premium notice indicating that he cut a check for the February 2000 premium. However, there is no competent evidence that this check was ever sent. Plaintiff testified at deposition that she had no personal knowledge concerning the premium payment notices or when any payments were made to Defendant. Pl.'s Dep. at 64–68, 70–5. Plaintiff also testified that she has no knowledge that she or her husband actually sent any checks to Defendant that it did not receive. *Id.* at 75. Moreover, the evidence further demonstrates that no funds were ever taken from Mr. Speziale's account for this check, thereby evidencing that it was never cashed. *Id.* at 75–76.[4] Accordingly, there is insufficient evidence in the record from which a fair-minded trier of fact could reasonably conclude that Mr. Speziale made all necessary premium payments. *Elston*, 274 A.D.2d at 939, 712 N.Y.S.2d 185.

■ The undisputed evidence in the record indicates that the premium due December 22, 2001 was not paid. Accordingly, the policy lapsed as of that date, subject to the thirty-one day grace period. Thus, had Mr. Speziale made an additional premium payment on or before January 22, 2002,[5] the policy would have remained in force. It should be recalled that the policy provides that the Defendant "will pay the Death Benefit to the Beneficiary when we receive at our Home Office due proof that the Insured dies while this policy was in force." Because the policy lapsed on January 22, 2002 prior to Mr. Speziale's death on February 1, 2002, under the plain terms of the contract, Defendant was under no contractual obligation to pay the death benefit.

For the foregoing reasons, Plaintiff's breach of contract cause of action must be dismissed.

### b. *New York Insurance Law*

New York Insurance Law provides that "[n]o policy of life insurance ... delivered or issued for delivery in this state ... shall terminate or lapse by reason of default in payment of any premium ... in less than one year after such default, unless a notice shall have been duly mailed at least fifteen and not more than forty-five days prior to the day when such a payment becomes due." N.Y. Ins. Law § 3211(a)(1) (McKinney 2004). This section does not apply to "[a]ny policy of insurance *requiring* the payment of premiums monthly or at shorter intervals, provided in the case of policies of life insurance the insurer issuing such policy elects with respect to all such policies to mail a written notice within six months after termination or lapse to the insured...." N.Y. Ins. Law § 3211(f)(2) (McKinney 2004) (emphasis added).

---

4. Plaintiff makes much of the fact that Defendant did not provide adequate notice that there was a delinquency in premium payments. Of course, the fact that the February 2000 check was never cashed should have alerted Mr. Speziale to the fact that his February 2000 premium was unpaid.

5. January 22 is thirty-one days after December 22.

The First and Third Departments of the New York State Supreme Court, Appellate Division, have held that the § 3211(f)(2) exception applies when the insured *elects* to pay premiums on a monthly basis, even if a monthly payment is not *required* under the terms of the policy. *See Elston,* 274 A.D.2d at 939, 712 N.Y.S.2d 185; *Brecher v. Mutual Life Ins. Co.,* 120 A.D.2d 423, 427, 501 N.Y.S.2d 682 (1986). However, this Court declines to follow the Appellate Divisions' interpretation as it is inconsistent with the plain meaning of the statute. *See Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 155 (2d Cir.1998) (noting that it is the New York Court of Appeals' interpretation of a New York State statute that is binding on the federal courts).

■ When the language of a statute is clear, effect should be given to the plain meaning of the words used. *Lloyd v. Grella,* 83 N.Y.2d 537, 611 N.Y.S.2d 799, 802, 634 N.E.2d 171 (1994). In such instances, the court should look no further than the unambiguous words and need not delve into legislative history or policy reasons behind the statute. *Id;* N.Y. Stat. Law § 76 (McKinney 2004). In addition, statutes requiring notice before forfeiture of a life insurance policy for nonpayment of the premiums are to be construed strictly in favor of the insured. 45 C.J.S. *Insurance* § 697 (2003). This is because the law does not favor forfeiture for nonpayment of premiums. *In re Preston's Will,* 29 N.Y.2d 364, 328 N.Y.S.2d 405, 407, 278 N.E.2d 623 (1972).

There is a further reason that the Court declines to follow the rationale of the previous Appellate Division cases. In holding that *electing* to pay premiums on a monthly basis is the equivalent of *requiring* them, the Third Department unequivocally relied on a factual point which it found significant, but which differs from the factual scenario that is now presented to the

Court. Namely, the Third Department explained that *"[n]otably,* the bank authorization signed by the [insured] advised that by choosing this [automatic withdrawal] option, defendant would not be sending premium notices." *Elston,* 274 A.D.2d at 939, 712 N.Y.S.2d 185 (emphasis added). The "notable" fact in *Elston,* therefore, is that Defendant made automatic monthly withdrawals without providing notice to the insured of the withdrawal at every payment. Such an automatic monthly procedure rendered a finding that monthly payments were *required.* In stark contrast, as explained by Defendant, Mr. Speziale *"elected* to receive his premiums on a monthly basis. As such, he received monthly premium notices that would have provided a 'due date' for payment of the premium." Dkt. No. 29, Exhibit Q (Letter from Defendant National Life) at ¶ 1 (emphasis added). The issuance of such premium notices provide further evidence that Speziale's policy did not *require* monthly payments, which takes his policy outside the realm of *Elston* and § 3211(f)(2).

■ Here, § 3211(f)(2) excepts out those policies that *require* the payment of premiums monthly or at shorter intervals. Mr. Speziale's life insurance policy did not require him to pay his premiums at either monthly or shorter intervals. In fact, the policy provides that "[t]he first Premium and its interval are shown in the Data Section." The Data Section contemplates an annual premium. The policy further states that "[p]remiums after the first *may* be paid for 12–, 6–, or 3–month intervals in any manner agreed to by us at the rate currently in effect." Def.'s Ex. D (emphasis added). Mr. Speziale opted, but was not required, to make his premium payments on a monthly basis. *Id.* Because the clear language of the § 3211(f)(2) exception renders it inapplicable to Mr. Speziale's policy, § 3211(a)(1) obligated

Defendant to provide him with written notice of its lapse "at least fifteen and not more than forty-five days prior to the day when ... a [premium] payment becomes due."

By letter dated June 1, 1999, Defendant wrote Mr. Speziale to advise him that the policy lapsed due to his non-payment of premiums. Def.'s Ex. G. However, Mr. Speziale responded by making the necessary payments to bring his premiums up to date, thus reinstating the policy. Def.'s Ex. F. In March and April 2000, Defendant notified Mr. Speziale that his payments were one month behind and were being applied retroactively. Def.'s Ex. H; Def's Ex. I. These payments fell within the thirty-one day grace period, preventing the policy from lapsing. Prior to Mr. Speziale's death in February 2002, his premium payments were behind by two months and Defendant considered his policy lapsed as of December 2001. However, there is no evidence that Defendant ever provided him with notification as required by § 3211(a)(1). Thus, Defendant was prohibited from treating the policy as lapsed.

■ Even if the policy at issue did *require* Mr. Speziale to make monthly premium payments, as *Elston* and *Brecher* may suggest, the § 3211(f)(2) exception to the more stringent § 3211(a)(1) notice requirement only applies if "the insurer issuing such policy elects ... to mail a written notice within six months after termination or lapse to the insured." N.Y.C.P.L.R. § 3211(f)(2). As previously discussed, Mr. Speziale remedied the lapse indicated in the June 1, 1999 letter and never received notification of the subsequent lapse. Thus, Defendant did not fulfill its duty under the § 3211(f)(2) exception and was, therefore, required to provide Mr. Speziale with written notice within six months of the date of the subsequent lapse. Having failed to give such notice, Defendant was prohibited from treating the policy as lapsed.

For the foregoing reasons, Defendant's failure to provide proper notice of lapse pursuant to N.Y.C.P.L.R. § 3211 prohibited Defendant from treating the policy as lapsed.

### c. Unjust enrichment and equitable estoppel

Plaintiff has also asserted that she is entitled to collect the death benefit of Thomas Speziale's policy under the theories of unjust enrichment and equitable estoppel. Because the Court holds that Defendant must pay on the policy for the reasons stated previously, it will not address these contentions.

## V. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant's motion for summary judgment is **DENIED**; it is further

ORDERED that Plaintiff's cross-motion for summary judgment is **GRANTED**; it is further

ORDERED that Defendant pay Plaintiff the death benefit that is due under the policy; and it is further

ORDERED that the above captioned case is **CLOSED**; and it is further

ORDERED that the Clerk serve a copy of this order on all parties.

IT IS SO ORDERED.