Carol B. SPEZIALE, as Administratrix of the Estate of Thomas A. Speziale, and individually, Plaintiff–Appellee,

v.

NATIONAL LIFE INSURANCE COMPANY, Defendant–Appellant.

No. 05–1472.

United States Court of Appeals, Second Circuit.

Dec. 12, 2005.

Barry I. Levy (Beth Shapiro), Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, LLP, New York, New York, for Appellant, of counsel.

Ronald B. Orlando, Orlando & Barbaruolo, PPLC, Latham, New York, for Appellee.

PRESENT: ROGER J. MINER, JOSÉ A. CABRANES, Circuit Judges, JOHN T. CURTIN, District Judge.*

SUMMARY ORDER

Defendant–Appellant National Life Insurance Company, Inc. appeals from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*) granting summary judgment in favor of Plaintiff–Appellee Carol B. Speziale and directing

---

* The Honorable John T. Curtin, Senior Judge, United States District Court for the Western District of New York, sitting by designation.

254

National Life to pay her the death benefit due under a life insurance policy issued to her deceased husband, Thomas Speziale. *Speziale v. National Life Ins. Co.*, 328 F. Supp.2d 295 (N.D.N.Y.2004).

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is AFFIRMED.

We assume the parties' familiarity with the facts, proceedings below, and issues on appeal. The essential facts are that, on February 2, 2002 (the day after Mr. Speziale died), Mrs. Speziale tendered her claim under the policy and concurrently sent a check payable to National Life in the amount of $209.43 for the outstanding monthly premium due. On February 15, 2002, National Life sent Mrs. Speziale a letter advising her that the policy was not in force on the date of Mr. Speziale's death because the premium had been paid only to December 22, 2001, which was outside of the policy's 31–day grace period.

The District Court determined that under the provisions of Section 3211 of the New York Insurance Law, National Life was prohibited from treating the policy as lapsed. Section 3211 provides:

No policy of life insurance ... delivered or issued for delivery in this state ... shall terminate or lapse by reason of default in payment of any premium ... in less than one year after such default, unless a notice shall have been duly mailed at least fifteen and not more than forty-five days prior to the day when such payment becomes due....

N.Y. Ins. Law § 3211(a)(1). This notice requirement does not apply to:

Any policy of insurance requiring the payment of premiums monthly or at shorter intervals, provided in the case of policies of life insurance the insurer issuing such policy elects with respect to all such policies to mail a written notice within six months after termination or lapse to the insured or to any other person who shall have been designated in writing to receive such notice, stating the type and amount of any automatic nonforfeiture benefit in force.

N.Y. Ins. Law § 3211(f)(2). The District Court held that because Mr. Speziale elected, but was not *required*, to make his premium payments on a monthly basis, Section 3211(f)(2)'s exception to the notice requirement of Section 3211(a)(1) was inapplicable, and National Life was therefore obligated to provide written notice of the lapse between fifteen and forty-five days prior to the date the premiums were due. *Speziale*, 328 F.Supp.2d at 301–02.

■ We agree with National Life's argument on appeal that this holding is in conflict with the holdings from every state appellate court to have considered the issue. *See Reczek v. National Ben. Life Ins. Co.*, 20 A.D.3d 887, 887, 798 N.Y.S.2d 816, 817 (4th Dep't 2005) (having elected to pay life insurance premiums on a monthly basis, decedent thereafter was "required" to make monthly payments and notice provision of Section 3211(a)(1) was rendered inapplicable); *Elston v. Allstate Life Ins. Co. of New York*, 274 A.D.2d 938, 939, 712 N.Y.S.2d 185, 186 (3d Dep't 2000) (exception of § 3211(f)(2) triggered by insured's election of policy's monthly automatic premium payment option); *Brecher v. Mutual Life Ins. Co. of New York*, 120 A.D.2d 423, 427, 501 N.Y.S.2d 879, 882 (1st Dep't 1986) (exception of § 3211(f)(2) applied where policy could be construed to permit monthly premium payments, and insured elected to make payments on a monthly basis); *see also Fauer v. Aetna Life Ins. Co.*, 70 F.2d 693, 694–95 (2d Cir.1934) (parties' modification of life insurance policy to provide for payment of monthly premiums rendered inapplicable notice requirement of predecessor statute, N.Y. Ins. Law

§ 92). Accordingly, we decline to adopt the District Court's interpretation of Section 3211.

■ We nonetheless affirm the District Court's grant of summary judgment in favor of Mrs. Speziale, and the direction that National Life pay her the death benefit under the policy, on different grounds. *See Palmer v. Occidental Chem. Corp.,* 356 F.3d 235, 236 (2d Cir.2004) ("We may affirm on any ground with support in the record, even if it was not the ground relied on by the District Court."). Specifically, although the District Court did not address the issue, we believe the record in this case establishes a course of dealing on the part of National Life estopping it from treating the policy as lapsed.

It has long been established that forfeiture of life insurance coverage for late payment of premiums is "not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted." *New York Life Ins. Co. v. Eggleston,* 96 U.S. 572, 577, 24 L.Ed. 841 (1877) (cited in *Nadler v. Commercial Travelers Mut. Acc. Ass'n of America,* 137 N.Y.S.2d 176, 180 (Sup.Ct. Bronx Co.1954)); *see* 69 N.Y. Jur.2d Insurance § 1049 ("If an insurer ..., by a custom to receive overdue premiums or assessments without objection, or by a custom not to exact prompt payment of the same, has created in the mind of the policyholder an honest, reasonably founded belief that strict compliance with a stipulation for punctual payment of premiums or assessments will not be insisted upon, but that payment may be delayed without a forfeiture, the insurer will be deemed to have waived the right to claim a forfeiture, or it will be estopped from enforcing the same, and this is so even though the policy or certificate expressly provides for forfeiture for nonpayment of premiums....").

Thus, a course of action on the part of the insurance company which leads the insured "honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." *Eggleston,* 96 U.S. at 577; *see also Kadelburg v. Hartford Accident & Indemnity Co.,* 223 A.D. 169, 171–72, 227 N.Y.S. 619, 622–23 (1st Dep't 1928), *aff'd,* 248 N.Y. 654, 162 N.E. 563 (1928) (course of dealing with payments of previous premiums gave rise to proper inference that extension of credit for last payment was intended, which credit kept policy in force absent notice of cancellation).

In this case, the record on appeal establishes that on March 22, 2000, National Life sent Mr. Speziale a letter advising that it had received his payment accompanied by the March 2000 premium notice, but that the February 2000 premium remained unpaid. Specifically, the letter stated:

THANK YOU FOR YOUR RECENT PAYMENT. ALTHOUGH YOUR REMITTANCE WAS RECEIVED WITH THE MARCH PREMIUM NOTICE, OUR RECORDS SHOW THAT THE FEBRUARY PREMIUM WAS UNPAID. CONSEQUENTLY WE HAVE APPLIED YOUR REMITTANCE TO THE UNPAID PREMIUM AS NOTED.

IN ORDER TO BRING YOUR CONTRACT TO A CURRENT STATUS, WE ARE ENCLOSING ANOTHER PREMIUM NOTICE WITH A RETURN ENVELOPE TO FACILITATE PAYMENT. PLEASE FORWARD THIS NOTICE WITH YOUR NEXT PAYMENT.

IF THIS INFORMATION DOES NOT AGREE WITH YOUR RECORDS, PLEASE NOTIFY U.S. AT YOUR EARLIEST CONVENIENCE. A similar letter was sent on April 19, 2000, advising that the payment sent with the April premium notice would be applied to the unpaid March premium, and enclosing another notice and return envelope to facilitate payment in order to bring the premiums up to date. The record also shows that on June 5, 2000, Mr. Speziale wrote a check in the amount of $418.86, which was received by National Life and credited to Mr. Speziale's account on June 9, 2000 as a double payment satisfying the April 22, 2000 and May 22, 2000 premiums. The record further reveals that National Life thereafter continued to accept Mr. Speziale's payments, and continued to credit each payment to the next premium due, for a period of eighteen months without sending further "out of order" letters or other notification that any premium remained unpaid or that the policy was otherwise not deemed by the company to be current. In our view, this course of dealing by National Life is sufficient to establish a custom to receive Mr. Speziale's overdue premium payments without objection, giving rise to an honest, reasonably founded belief on the part of the insured that payment of premiums was current.

National Life's citation to *Traynor v. John Hancock Mut. Life Ins. Co.*, 273 N.Y. 230, 7 N.E.2d 112 (1937), does not dictate a different result. In *Traynor*, the New York Court of Appeals held that the insurer's repeated acceptance of late premium payments did not create an obligation on the part of the insurer to accept payments overdue at the time of the insured's death. However, the policy sued on in that case contained specific language to this effect in its "Period of Grace" provision: "This policy will be paid ... if the Insured die[s] while premiums are in arrears not more than four weeks, but neither this concession nor the acceptance of any overdue premium shall create an obligation on the part of the Company to receive premiums which are in arrears...." *Traynor*, 273 N.Y. at 233, 7 N.E.2d 112. There is no similar language to be found in the provisions of the policy issued to Mr. Speziale, or in any of the notices or communications sent to him by the company. *See Nadler*, 137 N.Y.S.2d at 181–82 (distinguishing the holding in *Traynor* in part on the same ground).

Accordingly, under the circumstances of this case, National Life is estopped from treating the policy as lapsed.

\* \* \* \* \* \*

For the reasons stated above, we AFFIRM the judgment of the District Court granting summary judgment in favor of Mrs. Speziale and directing National Life to pay her the death benefit due under the life insurance policy issued to her husband, Thomas Speziale.