■ ANNE BRECHER, Respondent, v MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.—Order, Supreme Court, New York County (Myers, J.), entered April 26, 1985, which granted defendant's motion for reargument and, on reargument, adhered to the prior determination denying defendant's motion for summary judgment and granted plaintiff's cross motion to compel disclosure to the extent of directing the deposition of nonparty witness Eugene Feigenbaum, reversed to the extent appealed from, on the law, the motion for summary judgment granted and the cross motion for discovery denied, without costs. Order, same court, entered January 17, 1985, dismissed as superseded, without costs.

Defendant insurer, the Mutual Life Insurance Co. of New York (Mutual Life), issued an individual life insurance policy, No. 1068-72-58, in the face amount of $100,000 on the life of 65-year-old Alex Brecher, effective December 22, 1977, in consideration of payment of the initial monthly premium. Plaintiff Anne Brecher, the wife of the insured, was designated the primary beneficiary. Although the policy terms called for the payment of an annual premium of $7,830 at 12-month intervals reckoned from the policy date, from the inception of the policy the insured actually made payments on a monthly basis. On July 14, 1983, and pursuant to an earlier written request made by the insured, Mutual Life established "MONY-matic" account No. 992295, whereunder it was authorized to withdraw funds automatically on a monthly basis against the insured's checking account at Citibank to collect premiums for the policy. However, the July 15, 1983 item which Mutual Life drew, by electronic transfer, on the account for the premium payment due on July 22, 1983 was returned unpaid. During the intervening period between the request by the insured and the establishment of the "MONY-matic" account, a creditor of the insured had placed a re-

straining order upon the account. Plaintiff does not deny that the bank duly notified the insured, so that he knew or should have known that his account had been blocked for collection. On or about July 29, 1983, Mutual Life sent the insured a "Returned Check Notice" which advised him that the July premium withdrawal had been dishonored by his bank, and that in order to keep the policy in force, both the July and August premiums, totaling $1,358 would have to be paid on or before August 28, 1983. The replacement check drawn on the same blocked account tendered by the insured and received by the defendant on August 26, 1983 was also returned unpaid, marked "Refer to Maker".

Mutual Life affirms, by its attorney, that the replacement check was processed through the bank collection chain from New York City to its operation center and bank in Syracuse, back to the insured's bank in New York City and, upon presentment and dishonor, back to its bank in Syracuse and ultimately to it. Plaintiff received notice of dishonor from Mutual Life concerning the replacement check on or about September 23, 1983, approximately four days after its presentment and dishonor. In the interim, on or about September 18, 1983, the insured died. Mutual Life disclaimed liability on the grounds that the policy had, by its terms, lapsed prior to the insured's death due to the nonpayment of the required premium on July 22, 1983. Moreover, since the policy had not been surrendered for its cash value within 60 days after the due date of the first premium in default, and the insured had borrowed against all but $5 of the cash value of the policy, there was sufficient value only to purchase a single extra day of insurance for the insured. This action for recovery of the death benefit under the policy ensued.

Special Term denied Mutual Life's motion to dismiss the complaint for failure to state a cause of action or for summary judgment. The court further granted plaintiff's cross motion to compel the deposition of Eugene Feigenbaum, a field underwriter for Mutual Life, as a nonparty witness. Special Term subsequently granted reargument and adhered to its original decision but for different reasons. It held that there was "at least a semblance of an issue as to whether the policy had actually lapsed prior to the death of the insured." The court reasoned that because Mutual Life had allegedly, on no fewer than 14 prior occasions, notified the insured or Feigenbaum concerning returned checks, and accepted replacement checks for delinquent premiums without declaring a lapse, it might have waived the nonpayment provision of the subject policy.

The court indicated that discovery was necessary to determine why the defendant was not notified prior to the death of the insured that the replacement check tendered to pay the overdue premium payment was dishonored. We disagree and reverse. We note that the appeal from that portion of Special Term's order which granted the cross motion is moot since Feigenbaum's deposition was conducted pending this appeal.

Our search of the record reveals that no genuine, material issues of fact exist. The affidavits submitted by plaintiff failed to demonstrate that "facts essential to justify opposition may exist but cannot * * * be stated." (CPLR 3212 [f].) The subject insurance policy provides: "If any premium after the first is not paid on or before its due date, or within a grace period of 31 days thereafter, during which period this Policy shall continue in force, this Policy shall immediately terminate and have no further value except as may be provided under 'Optional Benefits on Lapse'." With respect to "Optional Benefits on Lapse", the policy states: "[T]his Policy * * * shall continue from the due date of the premium first in default as paid-up nonparticipating extended term insurance unless, within 60 days after such due date, it is surrendered for its cash value less any indebtedness or election is made to continue the Policy as reduced paid-up participating life insurance. The amount of extended term insurance shall be the face amount plus any existing dividend additions and deposits, less any indebtedness. Its period shall be such as the cash value less any indebtedness shall provide when applied as a net single premium. The amount of reduced paid-up life insurance shall be such as the cash value less any indebtedness shall provide when applied as a net single premium."

Mutual Life's proof demonstrated the defense of nonpayment to a mathematical certainty. It is uncontroverted that the insured failed to pay the premium due on July 22, 1983 by August 28, 1983. The policy thereby lapsed. In accordance with the "Optional Benefits on Lapse" provisions, the policy was continued from the due date of the premium first in default (July 22, 1983) as paid-up extended term insurance in the amount of $83,415 ($100,000 plus dividends of $60.28 less indebtedness of $16,645.47) for one additional day of insurance (cash value of $16,651.28 less indebtedness of $16,645.97 = $5.81 premium payment) until July 23, 1983. By the date of the insured's death, coverage had lapsed under the subject policy and the paid-up extended term insured had been exhausted.

Special Term erred in concluding that "a semblance of an

issue" existed which precluded summary judgment. A shadowy semblance of an issue is, like conjecture, surmise, or suspicion, insufficient to defeat a motion for summary judgment. *(Hanrog Distrib. Corp. v Hanioti,* 10 Misc 2d 659, 660 [Sup Ct, NY County 1945]; *Shapiro v Health Ins. Plan,* 7 NY2d 56, 63 [1959]; *Smith v Johnson Prods. Co.,* 95 AD2d 675 [1st Dept. 1983].) Plaintiff's allegations concerning the "prior course of dealing" between the insured and the defendant are irrelevant. The record establishes that Mutual Life gave the insured an opportunity to pay the delinquent July premium consonant with its purported "prior practice" of forgiving late payment of a single premium. However, on this occasion and unlike any other occasion, the replacement check tendered by the insured to pay the already overdue premium was itself returned unpaid. Mutual Life's purported "prior practice" has nothing to do with either the insured having tendered a worthless replacement check or with Mutual Life's response to this tender. The purported "prior practice" clearly did not obligate Mutual Life to afford the insured with two consecutive opportunities to pay a delinquent premium. Further, circumstances extrinsic to an agreement are irrelevant where, as here, the intention of the parties can be gathered from the four corners of the instrument itself. *(Bethlehem Steel Co. v Turner Constr. Co.,* 2 NY2d 456, 460 [1957].)

It is a cardinal rule that an insurer's voluntary, repeated acceptance of late payment of premium neither binds it to accept those overdue at the time of an insured's death after the grace period under the policy has expired nor entitles the beneficiary to invoke the doctrines of waiver or estoppel. A contrary rule would be detrimental to the public interest. It would discourage insurers from ever forgiving a late payment for fear of endangering their subsequent rights to declare a lapse for nonpayment. *(Traynor v John Hancock Mut. Life Ins. Co.,* 273 NY 230, 236 [1937].)

We disagree with Special Term's conclusion that the insured may have reasonably relied upon Mutual Life's practice of furnishing "Returned Check Notices." The plain language of the notice reflected Mutual Life's express reservation of the right to declare a lapse for nonpayment of an overdue premium. The notice essentially stated that coverage would lapse unless the overdue premiums were paid. Mutual Life apparently furnished such notices as gratuitous, "friendly reminders". These notices are not the mandatory species of notice of cancellation which must be provided pursuant to Insurance Law § 151 (renumbered § 3211, L 1984, ch 367, § 1 eff Sept. 1,

1984). The subject policy falls within the exception to section 151 for policies "requiring" premiums on a monthly basis. (Insurance Law § 3211 [f] [2].) The policy states that the premium payment of $7,830 is due annually "at twelve policy month intervals reckoned from the policy date." Yet, it further provides that "[t]he interval of payment for future payments may be changed to annual, semi-annual, or quarterly * * * Any such change shall be effective upon acceptance by the Company of payment of the premium for the new interval or upon receipt by the Company of written request for such change." The record reflects that, after his initial monthly premium payment, the insured made payments on a monthly basis. Additionally, in March 1983, he submitted a written request for a "MONY-matic" plan involving monthly payments. In our view, the subject policy may fairly be construed to permit a monthly schedule of payments, in addition to the less frequent payment schedules listed, and the insured effectively changed over to a monthly schedule. For these reasons, and since, as discussed above, Mutual Life's purported "prior practice" is not germane to consecutive defaults, the question of why Mutual Life received notice that the replacement check had been dishonored only after the insured's death involves no material issue of fact which would justify denial of Mutual Life's motion for summary judgment. Concur—Sandler, J. P., Sullivan, Fein, Kassal and Rosenberger, JJ.