Li Chung Pei v Security Mut. Life Ins. Co. of N.Y. (2025 NY Slip Op 51306(U))

[*1]

Li Chung Pei v Security Mut. Life Ins. Co. of N.Y.

2025 NY Slip Op 51306(U)

Decided on August 18, 2025

Supreme Court, New York County

Moyne, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 18, 2025
Supreme Court, New York County

Li Chung Pei, Plaintiff,

against
Security Mutual Life Insurance Company of New York, Defendant.

Index No. 650311/2024

Nicholas W. Moyne, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 5, 6, 7, 8, 9, 10, 11, 12, 13, 17, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 36, 37 were read on this motion to/for DISMISSAL.
This case involves a dispute regarding life insurance coverage. Plaintiff Li Chung Pei ("plaintiff") is suing Security Mutual Life Insurance Company of New York ("defendant") for breach of contract, breach of implied covenant of good faith and fair dealing and violation of Insurance Law § 3211 (a) (1). Plaintiff argues that defendant waived forfeiture for premium nonpayment by repeatedly accepting plaintiff's overdue premium payments prior to the insured's death. Consequently, plaintiff argues that a course of dealing was established, and defendant should be estopped from denying him coverage.
Presently before this court are defendant's motion to dismiss pursuant to CPLR 3211 (a) (1) and 3211 (a) (7), and plaintiff's cross-motion for summary judgment pursuant to CPLR 3212 (c).
For the reasons stated below, defendant's motion to dismiss is partially granted and plaintiff's cross-motion is denied.
BACKGROUND FACTS AND PROCEDURAL HISTORY
Plaintiff's Allegations In The Complaint
Defendant issued a life insurance policy, bearing number ending in 0281, for $1,000,000 ("the policy") (NYSCEF Doc No. 1, complaint, ¶ 6). Plaintiff is the owner and the beneficiary of the policy, and his brother and business partner, Chien Chung Pei ("the insured"), was the insured (id., ¶¶ 6-7). The policy's initial expiration date was January 19, 2025, and the premium payments were set at $915.48 to be paid on 19th day of each calendar month (id., ¶¶ 8, 16).
On December 13, 2023, the insured died of a heart attack (id., ¶ 9). Plaintiff submitted a claim for the death benefits but was denied on the grounds that the policy was no longer in effect [*2](id., ¶ 10).
During the relevant time, plaintiff and the insured were partners of the architect firm PEI Partnership Architects, LLP ("PEI Partnership") (id., ¶ 7). Plaintiff acted through PEI Partnership, as PEI Partnership had multiple insurance policies administered by defendant (id., ¶¶ 11 - 13). Consequently, defendant sent a list of the bills to PEI Partnership for all the policies it had with defendant, including for the subject policy (id., ¶ 13).
PEI Partnership had a history of making late premium payments and defendant had a history of accepting them (id., ¶ 14). PEI Partnership fell behind in premium payments and in arrearage over a long period of time because defendant failed to inform PEI Partnership of the premiums it owed to defendant (id., ¶ 25). Defendant's failure to send timely premium notices also caused confusion for the PEI Partnership and plaintiff (id., ¶ 33). Specifically, defendant failed to send premium payment notices to PEI Partnership for the months of March and November in 2023, causing it to fall behind its premium payments (id., ¶¶ 15, 25).
Prior to the insured death, PEI Partnership made late premium payments that went beyond the expiration of the 31-day grace period, and defendant did not cancel the policy, nor did it suffer any prejudice from the delay (id., ¶ 22). Defendant thus created a reasonable expectation for PEI Partnership and plaintiff that "late payments would be accepted, including the payments for the time period of the insured's death," and such late payments would not result in the termination of the policy (id., ¶¶ 20, 24). Consequently, the policy premiums were fully paid and the policy was in effect when the insured died in December 2023 (id., ¶ 18).
On December 27, 2023, defendant sent PEI Partnership a reminder notice stating that the October 19, 2023 premium was owed, but also informed PEI Partnership to disregard the notice if the premium payment was already mailed (id., ¶ 26). This December 27, 2023 notice also did not request sufficient premium payments to bring the policy to date, which kept plaintiff/PEI Partnership "on the precipice of lapse for non-payment of premiums," constituting an anti-consumer behavior (id., ¶ 28). A day after the reminder notice, defendant sent a special late payment offer to PEI Partnership on December 28, 2023, stating that the policy coverage lapsed and offered reinstatement under the policy's conditions (id., ¶ 29). Defendant's special late payment offer notice was confusing and not effective to terminate the policy when just a day before defendant invited plaintiff to pay the past due premium for October 19, 2023 (id.).
For all these reasons, under the principles of waiver and estoppel, the policy should be deemed to have been in force after the insured's death even if the grace period of the outstanding premium payments had expired (id., ¶¶ 30, 37). Otherwise, it would mean that prior to the insured's death, defendant collected money while not providing life insurance coverage and was unjustly enriched (id., ¶¶ 31-32). Further, defendant did not properly cancel the policy pursuant to Insurance Law § 3211 and it breached the policy contract by refusing to pay the policy proceeds, prejudicing plaintiff who relied on the course of dealing of accepting late payments.
Documentary Evidence
On January 14, 2010, plaintiff entered into a life insurance policy agreement with defendant for $1,000,000, bearing number ending in 0281 (NYSCEF Doc No. 8, Powell affirmation, exhibit a, life insurance policy). The policy was payable for 15 years (id.). In the policy, plaintiff is listed as the owner and the beneficiary of the policy and plaintiff's brother and business partner, Chien Chung Pei, is listed as the insured (id.). Pursuant to the contract, payment of premiums was to start on January 19, 2010, and plaintiff had the option to choose from making annual, semi-annual, quarterly or monthly payments (id.). Plaintiff chose to make [*3]monthly premium payments in the amount of $915.47 (id.).
Under the policy, premiums were to be paid while the insured was alive (id.). The policy provided a 31-day grace period to allow for payments of premiums due and the policy "continued in force" during the grace period (id.). The policy further contained the following provision: "Any premium not paid before the grace period ends will result in default and benefits provided by this policy will cease. The default date is the date on which the unpaid premium is due" (id.).
If the policy lapsed, it could be reinstated, however, "within 5 years after default if: (a) the [i]nsured is alive; (b) evidence of insurability satisfactory to the [c]ompany is given; and (c) all overdue premiums are paid with interest at 6% a year from the due date of each premium" (id.). To change the policy, a written agreement signed by the president, the vice president or the secretary of the company was required (id.).
Defendant sent Pei Partnership the billing statements listing the monthly amounts due for the policy (NYSCEF Doc No. 9, Powell affirmation, exhibit b, billing statements; NYSCEF Doc No. 25, Dinnocenzo affirmation, exhibit b, list of bills). These statements also listed the billing amounts due on other policies that Pei Partnership had with the defendant (id.).
The parties submitted a list of bills for the months of January 2, 2023, March 1, 2023, April 3, 2023, May 1, 2023, June 1, 2023, July 3, 2023, August 1, 2023, September 1, 2023, October 2, 2023, November 1, 2023, and December 1, 2023 (NYSCEF Doc No. 9; NYSCEF Doc No. 25). The invoices for January 2, 2023, March 1, 2023, and November 1, 2023 contain a notice with the following pertinent language: "[t]o avoid lapse of policies, premiums must be paid to the Company on the indicated due date or within 31-day grace period thereafter. If payment is not received within this period, all past due policies will become null and void" (NYSCEF Doc No. 9).
On December 27, 2023, days after the October 19, 2023 premium payment was overdue, defendant sent a reminder notice to plaintiff informing him that the October 19, 2023 premium payment was outstanding (NYSCEF Doc No. 10, Powell affirmation, exhibit c, reminder notice). The notice further advised plaintiff to "please disregard" the notice if he already made the payment for October 19, 2023 (id.). The notice contained language stating that unless the payment due was made by the expiration of the grace period, the policy would lapse (id.).
A day after, on December 28, 2023, defendant sent a special late payment offer to plaintiff offering to reinstate his coverage under the policy (NYSCEF Doc No. 11, Powell affirmation, exhibit d, special late payment offer). The notice stated that plaintiff's policy had lapsed for failure to make timely premium payments and the notice offered plaintiff to reinstate the coverage if he met the policy's necessary conditions: one of which required that the insured be alive (id.). 

DISCUSSION
Under CPLR 3211 (a) (7), the movant has the burden to demonstrate that the complaint, construed liberally in favor of the plaintiff, states no legally cognizable cause of action (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; see also Goshen v Mut. Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]. Plaintiff is accorded "the benefit of every possible favorable inference" (Goshen, 98 NY2d at 326 [internal quotation marks and citation omitted]). "Whether the plaintiff will ultimately be successful in establishing [its] allegations is not part of the calculus" (Greystone Funding Corp. v Kutner, 121 AD3d 581, 583 [1st Dept 2014] [internal quotation marks and citation omitted]).
"When documentary evidence is submitted by a defendant 'the standard morphs from whether the plaintiff has stated a cause of action to whether it has one'" (Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc., 115 AD3d 128, 135 [1st Dept 2014]). On a "CPLR 3211 (a) (1) motion to dismiss on the ground that the action is barred by documentary evidence, such motion may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen, 98 NY2d at 326; see also Art & Fashion Group Corp. v Cyclops Prod., Inc., 120 AD3d 436, 438 [1st Dept 2014]).
"In order to prevail on a CPLR 3211 (a) (1) motion, the documents relied on must definitively dispose of plaintiff's claim" (Blonder & Co., Inc. v Citibank, N.A., 28 AD3d 180, 182 [1st Dept 2006]). "If the documentary proof disproves an essential allegation of the complaint, dismissal pursuant to CPLR 3211 (a) (1) is warranted even if the allegations, standing alone, could withstand a motion to dismiss for failure to state a cause of action" (Kolchins v Evolution Mkts., Inc., 128 AD3d 47, 58 [1st Dept 2015], affd 31 NY3d 100 [2018]). "Judicial records, such as judgments and orders, would qualify as 'documentary,' as should the entire range of documents reflecting out-of-court transactions, such as contracts, deeds, wills, mortgages, and even correspondence" (Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc., 120 AD3d 431, 432 [1st Dept 2014] [internal quotation marks and citations omitted]).
A. Insurance Law § 3211 (a) (1)
Plaintiff argues that Insurance Law § 3211 (a) (1) applies and that defendant's termination of the policy fails because defendant did not provide a notice of termination as required by the statute. In opposition, defendant argues that because plaintiff chose to pay the premiums monthly, Insurance Law § 3211 does not apply and defendant was not statutorily required to send a notice of termination.
Because the subject policy "premiums were paid on a monthly basis, § 3211(a) (1) does not apply" (McGarr v Guardian Life Ins. Co. of Am., 19 AD3d 254, 255-56 [1st Dept 2005] [citations omitted]). It is also undisputed that plaintiff had the option to make annual, semi-annual, quarterly or monthly payments under the policy, but chose monthly payments. "[T]he defendant, thus, was not required to notify the plaintiff that the policy lapsed because the insured elected to pay the premiums on a monthly" basis (Gerold v Companion Life Ins. Co., 31 AD3d 378, 380 [2d Dept 2006]).
For these reasons, the notice provision of Insurance Law § 3211 (a) (1) does not apply and the claim is dismissed. 
B. Breach of Contract through Waiver and Estoppel
In its motion to dismiss, defendant argues that plaintiff's breach of contract claim on the grounds of waiver and estoppel should be dismissed because the contract is clear that if plaintiff did not pay the premiums within the grace period the insurance would lapse. Defendant further argues that each bill sent to plaintiff's agent had a disclosure notice that accepting late premium payments did not operate as a waiver of the rights under the contract. Defendant contends that its acceptance of plaintiff's overdue premium payments prior to the insured's death should be deemed as reinstatements: as "the late premium payments were accepted either during the policy's grace period or subject to policy's reinstatement provision" (NYSCEF Doc No. 33, p. 1).
As to the payments specifically, defendant argues that the last payment that plaintiff made prior to the insured's death was for September 19, 2023, which carried the insurance until October 19, 2023 with the 31-day grace period. Defendant further argues that two days after the [*4]insured died, on December 15, 2023, plaintiff sent a payment that would have covered the October 19, 2023 outstanding premium with the grace period until November 19, 2023. Defendant thus argues that the policy elapsed on November 19, 2023.
In response, plaintiff argues that defendant's conduct of repeatedly accepting plaintiff's overdue premium payments established a course of dealing that waived forfeiture for nonpayment of premiums. Plaintiff emphasizes that defendant accepted his overdue premium payments over time inconsistent with the policy's forfeiture provision, waiving its right to strictly enforce the nonpayment of premiums. Plaintiff contends that defendant's conduct thus "lulled the plaintiff into believing that the policy would stay in force if he responded to the List Bills as he had done in the past, triggering the principles of estoppel" (NYSCEF Doc No. 23, p. 16). Further, plaintiff argues that defendant's termination of the policy and its refusal to pay the policy proceeds constitutes a breach of contract because defendant waived forfeiture for nonpayment of premiums.
"Generally, the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies" (Gilbane Bldg. Co./TDX Constr. Corp. v St. Paul Fire & Mar. Ins. Co., 31 NY3d 131, 135 [2018] [internal quotation marks and citation omitted]; see also Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc., 16 NY3d 257, 264 [2011]). "[W]hen interpreting an insurance contract, as with any written contract, the court must afford the unambiguous provisions of the policy their plain and ordinary meaning" (Greater NY Mut. Ins. Co. v United States Underwriters Ins. Co., 36 AD3d 441, 442 [1st Dept 2007] [citations omitted]).
To prevail on a cause of action for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) plaintiff's performance thereunder, (3) the defendant's breach, and (4) resulting damages (Harris v Seward Park Hous. Corp., 79 AD3d 425, 426 [1st Dept 2010]; see also Lebedev v Blavatnik, 193 AD3d 175, 182 [1st Dept 2021]).
"[W]aiver and estoppel have been held applicable in insurance cases to regulate the actions and relationship of an insurer with its insured and to avoid forfeitures, which are not favored in the law" (Gilbert Frank Corp. v Fed. Ins. Co., 91 AD2d 31, 34 [1st Dept 1983] [citations omitted]). A waiver "constitutes the intentional relinquishment of a known right, with full knowledge of the facts upon which the existence of the right depends" (id. at p. 33). When an insurer "with knowledge of the breach of the policy, manifests an intention, express or implied, to surrender a right, by unequivocal action inconsistent with a forfeiture of the policy, it may be concluded that the insurer waived the ground for forfeiture" (id.). Similarly, equitable estoppel may be used "to estop an insurer where, with knowledge of the facts, it acts in a manner inconsistent with a forfeiture" (id.). "Waiver and estoppel ordinarily involve questions of fact" (id. at p. 35; see also Equitable Life Assur. Socy. of U.S. v Smith, 232 AD 478, 480 [1st Dept 1931]).
"[F]orfeitures are not favored in the law; and courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted" (New York Life Ins. Co. v Eggleston, 96 US 572, 573, 24 L Ed 841 [1877]; see also Matter of Preston, 29 NY2d 364, 368 [1972] ["forfeiture for nonpayment of premiums is not favored in law and will not be enforced, absent a clear intention to claim that right"] [citations omitted]).
A company, thus, may waive a condition in a policy:
"that the insurance is not to be considered as binding until actual payment of the [*5]premium . . . and this waiver may be shown by direct proof that credit was given, or such waiver of prompt payment may be inferred from the circumstances . . . a mere non-payment of premium under such circumstances does not destroy the policy where the company does not give notice of its election to rescind the contract"
(Kadelburg v Hartford Acc. & Indem. Co., 223 AD 169, 172 [1st Dept 1928] [citations omitted]). A custom of defendant to "extend credit for payment of premiums" and the "course of dealing as to previous payments" can keep "the policy in force in the absence of notice of cancellation" (Kadelburg v. Hartford Acc. & Indem. Co., 248 NY 654, 654 [1928]; see also Kadelburg, 223 AD at 172 ["A premium need not be paid in advance nor tendered on the day when the renewal is to be made, provided a course of dealing has been such as to justify the inference and belief that credit is to be extended"].
However, where the insured specifically
"agreed with the company, in the 'period of grace' clause [in the policy], that neither the concession of four weeks' grace period in which to pay past-due premiums 'nor the acceptance of any over-due premiums shall create an obligation on the part of the Company to receive premiums which are in arrears, nor shall it be a waiver of their payment,"
the insurance company's previous acceptance of over-due premiums payments does not create an obligation to "receive future overdue payments" (Traynor v. John Hancock Mut. Life Ins. Co., 273 NY 230, 235 [1937]).
Applying the law to the facts at hand, the documentary evidence does not conclusively show that defendant did not waive forfeiture for nonpayment of premiums, nor does it show that it should not be estopped from denying plaintiff the death benefits. There is no dispute that plaintiff had a history of making late payments and defendant had a history of accepting such payments.[FN1]
Specifically, the documentary evidence shows that in 2023 defendant accepted plaintiff's overdue premium payments, past the 31-day grace period and before the insured's death, for the months of May, June, July, August and September [FN2]
(emphasis added). Defendant continued to accept plaintiff's overdue premium payments without objection, which was inconsistent with the forfeiture provision of the policy. In doing so, defendant also did not send plaintiff any notice that the policy was not in effect or that the policy was being reinstated. The evidence in the record thus does not conclusively show that defendant's acceptance of plaintiff's "'overdue premium payments without objection' did not give rise 'to an honest, reasonably founded belief on the part of [plaintiff]' that forfeiture" for nonpayment of premiums was waived by defendant (Speziale v Natl. Life Ins. Co., 159 Fed Appx 253, 256 [2d Cir 2005]).
Defendant's December 27, 2023 and December 28, 2023 letters further fail to conclusively refute plaintiff's allegations or to demonstrate a defense. Defendant sent a letter to plaintiff on December 27, 2023 stating that the October 19, 2023 bill was outstanding but if [*6]plaintiff already mailed the payment, to "please disregard this notice" (NYSCEF Doc No. 10). At the time the December 27, 2023 letter was sent, however, plaintiff had sent the premium payment on December 15, 2023 and defendant accepted that payment. Plaintiff contends that the letters are further evidence that defendant waived forfeiture for nonpayment of premiums, that the termination was ineffective, and that when defendant send the December 28, 2023 special offer letter, there was nothing left to reinstate. Notably, defendant sent the December 27, 2023 letter to plaintiff after the grace period for the October 19, 2023 payment lapsed, which was inconsistent with the policy's forfeiture for nonpayment provisions. The letter did no not state that credit would not be extended if plaintiff already made the October 19, 2023 payment or that the policy was not in effect. When defendant, thus, then sent a letter of reinstatement on December 28, 2023, just a day after the December 27, 2023 letter, stating that the policy had lapsed for premium nonpayment, it was after it accepted plaintiff's October 19, 2023 premium payment past the grace period and after sending him a letter informing him that if he already paid the October 19, 2023 premium to ignore that letter.
Defendant's argument that the December 27, 2023 and December 28, 2023 notices were computer-generated and that plaintiff cannot rely on such letters does not negate the fact that defendant sent them to plaintiff or that it accepted plaintiff's payment for outstanding premiums after the insured's death. Notably, the defendant did not think reinstatement was necessary as per its December 27, 2023 letter, which was sent just a day before and explicitly stated that if plaintiff made the October 19, 2023 payment, which he had, to ignore the letter. Defendant's practice thus "would reasonably indicate to a member who habitually paid late, as [plaintiff] did, that his payments were being accepted on the basis of a continuing certificate, defendant waiving his customary lateness, since not only was the word 'reinstatement' not used in the regular receipt issued to him, but, in addition, no application for reinstatement was on any of these occasions requested of him" (Nadler v Commercial Travelers Mut. Acc. Ass'n of Am., 137 NYS2d 176, 180 [Sup Ct, Bronx County 1954]).
The documentary evidence also fails to conclusively show that the policy lapsed on November 19, 2023, as argued by defendant. The evidence shows that defendant sent plaintiff a bill on December 1, 2023 listing October 19, 2023 as outstanding (NYSCEF Doc No. 25). In response, on December 15, 2023, plaintiff sent defendant a premium payment amount, after the insured's death, for which one of the months the parties in their papers agree was to cover October 19, 2023 outstanding payment. Defendant, however, argues that it refunded plaintiff this premium payment in January 2024. Even if the documentary evidence conclusively showed that defendant did not waive forfeiture for premium nonpayment, which the court does not find in this case, then plaintiff's last payment before the insured's death, for September 19, 2023, would have covered the policy only until October 19, 2023 instead of November 19, 2023. Put simply, while defendant argues that the policy lapsed on November 19, 2023, it is not clear how defendant is computing such a date when it argues that September 19, 2023 was the last premium payment that plaintiff made before the insured's death (carrying the insurance policy to October 19, 2023 with the 31 day-grace period), while also arguing that it refunded plaintiff the premium payments that he made after the insured's death. Further, it is not clear from the evidence what amount of plaintiff's December 15, 2023 payment was refunded.
Defendant heavily relies on the Brecher v Mutual Life Ins. Co. of NY (120 AD2d 423 [1st Dept 1986]) case to argue that it did not waive forfeiture for plaintiff's overdue premium payments. The facts in Brecher, however, are distinguishable from the facts at hand because the [*7]court in that case specifically addressed a bounced check. The insured in Breecher sent a check to the life insurance company, which gave the insured an opportunity to make a late payment in line with its prior practice, that was "worthless" and was returned as unpaid (id. at 426). Under these facts, the court stated that despite the prior course of dealing between the parties, there was no history where defendant gave plaintiff an opportunity to pay an overdue premium and plaintiff sent a bounced check: "Mutual Life's purported 'prior practice' has nothing to do with either the insured having tendered a worthless replacement check or with Mutual Life's response to this tender" (id.).
For all these reasons, plaintiff sufficiently alleged breach of contract through estoppel and waiver and the submitted documentary evidence do not conclusively refute his allegations.
C. Breach of Implied Covenant of Good Faith and Fair Dealing Claim
Plaintiff claims that defendant also breached its duty of good faith and fair dealing that it owed to plaintiff when it failed to send premium notices for specific months and specified an insufficient premium amount causing the policy to remain in an arrearage. Defendant argues that the contract is unambiguous, and plaintiff cannot imply obligations into the contract that are inconsistent with the policy terms.
"[A]ll contracts imply a covenant of good faith and fair dealing in the course of performance . . . embrac[ing] a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002]; see also AEA Middle Mkt. Debt Funding LLC v Marblegate Asset Mgt., LLC, 214 AD3d 111, 132 [1st Dept 2023]). "As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that 'a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims'" (Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of New York, 10 NY3d 187, 194 [2008]).
"However, the implied covenant 'is not without limits' . . . Courts will imply an obligation of good faith only 'in aid and furtherance of other terms of the agreement of the parties'" (Singh v City of New York, 40 NY3d 138, 146 [2023], rearg denied, 40 NY3d 975 [2023] [citations omitted]; see also DirecTV, LLC v Nexstar Broadcasting, Inc., 230 AD3d 439, 442 [1st Dept 2024]). The covenant thus "encompasses only those 'promises which a reasonable person in the position of the promisee would be justified in understanding were included" (Singh, 40 NY3d at 146).
Applying the law to the facts at hand, the documentary evidence does not conclusively show that plaintiff's allegations that defendant did not send premium notices for specific months and did not specify or reflect sufficient premium amounts, causing the policy to remain in an arrearage, are inconsistent with other terms of the contractual relationship. The evidence does not conclusively demonstrate that a reasonable person in plaintiff's position would not be justified in understanding that monthly premium notices, listing the required monthly payments that plaintiff had to make pursuant to the contract, or invoices from defendant reflecting the total premium amounts due to bring the policy to date, were not included.[FN3]
In fact, defendant's argument that plaintiff cannot imply any obligation into the contract that is inconsistent with the [*8]policy's terms is conclusory and defendant fails to address how plaintiff's allegations of such obligation are inconsistent with the policy's terms.
For all these reasons, defendant's motion to dismiss breach of implied covenant of good faith and fair dealing claim is denied.
D. Plaintiff's Motion for Summary Judgment
Plaintiff moves for a summary judgment pursuant to CPLR 3212 (c) arguing that there are no undisputed facts regarding the content and timing of the policy's premium notices and payments. He argues that defendant waived forfeiture for nonpayment of premiums through its course of dealing with plaintiff and should be estopped from denying plaintiff coverage. Defendant argues that plaintiff's motion for summary judgment is not supported by proof in admissible form and it is premature because it was filed before the issue has been joined.
Under 3212 (a), a summary judgment is available "after the issue has been joined" (see CPLR 3212 [a]). "The Court of Appeals has noted that the rule barring a pre-joinder motion for summary judgment is strictly applied" (SHG Resources, LLC v SYTR Real Estate Holdings LLC, 201 AD3d 610, 611 [1st Dept 2022], citing City of Rochester v Chiarella, 65 NY2d 92, 101 [1985]). Further, CPLR 3212 (c), provides that:
"[i]f it appears that the only triable issue of fact arising on a motion for summary judgment relate to the amount or extent of damages, or if the motion is based on any of the grounds enumerated in subdivision (a) and (b) of rule 3211, a court may, when appropriate for the expeditious disposition of the controversy, order an immediate trial of such issues of fact raised by the motion, before a referee, before the court, or before the court and a jury, whichever may be proper" (CPLR 3212 [c]).
Here, the court denies plaintiff's motion for summary judgment under CPLR 3212 (c) as premature, as CPLR 3212 (a) requires joinder of issue (CPLR 3212 [a]). Defendant has not yet answered the complaint in this case, and "a motion for summary judgment brought before a defendant has answered the complaint is premature and must be denied" (SHG Resources, 201 AD3d at 611, [citations omitted]). Although CPLR 3211 (c) allows a court, "on notice to the parties, to treat a motion to dismiss as a motion for summary judgment before issue is joined, that is not the case here, where [plaintiff] moved directly for summary judgment" (SHG Resources, 201 AD3d at 611; see also CPLR 3211 [c]). 
For all these reasons, plaintiff's motion for summary judgment is dismissed as premature. The court has considered the parties' remaining contentions and finds them unavailing.

CONCLUSION and ORDER
ORDERED that defendant Security Mutual Life Insurance Company of New York's motion to dismiss is only granted as to plaintiff Li Chung Pei's Insurance Law § 3211 (a) (1) cause of action and that claim is dismissed; and it is further
ORDERED that defendant Security Mutual Life Insurance Company of New York is directed to serve an answer as to the remaining causes of action within 20 days after service of a copy of this order with notice of entry; and it is further
ORDERED that plaintiff Li Chung Pei's motion for summary judgment pursuant to CPLR 3212 (c) is denied as premature.
DATE 8/18/2025
Nicholas W. Moyne, J.S.C.

Footnotes

Footnote 1:Although the parties did not address whether defendant accepted plaintiff's overdue payments prior to 2023.

Footnote 2:Defendant does not dispute plaintiff's list of the months that were paid past the grace period.

Footnote 3:The court notes that defendant did not argue that plaintiff's breach of implied covenant of good faith and fair dealing claim is duplicate to his contract claim. The court will thus not address it.